**Cheryl BERTRAND, Petitioner,**

v.

**BOARD OF COUNTY COMMISSIONERS OF PARK COUNTY, Respondent.**

**No. 93SC95.**

Supreme Court of Colorado, En Banc.

April 18, 1994.

Rehearing Denied May 9, 1994.

---

Waltz, D'Antuono, Correll & Anderson, Richard A. Waltz, Denver, for petitioner.

Dunn, Abplanalp & Christensen, P.C., John W. Dunn, Lawrence P. Hartlaub, Vail, for respondent.

Robert F.T. Krassa, Boulder, for amicus curiae Leonard Talkington.

McFlynn & Pickett, P.C., Timothy McFlynn, Aspen, for amicus curiae Jennifer Hoffman.

Chief Justice ROVIRA delivered the Opinion of the Court.

The Colorado Governmental Immunity Act (GIA) waives the defense of sovereign or governmental immunity[1] for the op-

---

1. The term "sovereign immunity" generally refers to the immunity of the state or federal government whereas the term "governmental immunity" refers to the immunity of all levels of gov-

eration of a publicly owned or leased motor vehicle by a public employee. § 24–10–106(1)(a), 10A C.R.S. (1988). We granted certiorari to review *Bertrand v. Board of County Commissioners,* 857 P.2d 477 (Colo. App.1992), in order to construe the term "motor vehicle" for purposes of this exception.

I

■ As this case requires us to interpret one of the exceptions to the GIA, we believe it is appropriate first to resolve an inconsistency that has arisen in our opinions regarding the GIA. Specifically, we have stated that the immunity created by the GIA is in derogation of the common law and must be strictly construed, *State v. Moldovan,* 842 P.2d 220, 222 (Colo.1992); *Willer v. City of Thornton,* 817 P.2d 514, 518 (Colo.1991); *City of Aspen v. Meserole,* 803 P.2d 950, 955 (Colo.1990); *State v. Hartsough,* 790 P.2d 836, 838 (Colo.1990); *Stephen v. City & County of Denver,* 659 P.2d 666, 668 n. 3 (Colo.1983), and that the exceptions to the GIA are in derogation of the common law and must be strictly construed. *Jenks v. Sullivan,* 826 P.2d 825, 827 (Colo.1992); *Bloomer v. Board of County Comm'rs,* 799 P.2d 942, 946 (Colo.1990). In short, we have concluded that both sovereign immunity and the waiver of sovereign immunity are in derogation of the common law. In resolving this issue, we must determine whether sovereign immunity was part of the common law of Colorado, and if it was, whether it remained the law until the adoption of the GIA.

Though the origin of sovereign immunity is obscure, the doctrine, as we know it, developed in England and was based upon the historical fiction that the king could do no wrong, and thus, was free from legal accountability. *See generally,* Edwin M. Borchard, *Governmental Responsibility in Tort,* 36 Yale L.J. 1 (1926). The doctrine of sovereign immunity became deeply embedded in the English common law and subsequently, through judicial recognition and reiteration, became a familiar axiom in American jurisprudence.[2] *See Kawananakoa v. Polyblank,* 205 U.S. 349, 353, 27 S.Ct. 526, 527, 51 L.Ed. 834 (1907); *see also The Federalist No. 81,* at 414 (Alexander Hamilton) (Garry Wills ed., 1982) ("It is inherent in the nature of sovereignty, not to be amenable to the suit of an individual *without its consent.* This is the general sense and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every state in the union.").

In *County Commissioners v. Bish,* 18 Colo. 474, 33 P. 184 (1893), this court expressly recognized the doctrine of governmental immunity stating "[t]he rule that counties are not liable for torts, in the absence of statute, is universally acknowledged." *Id.* at 475, 33 P. at 184. Shortly thereafter, sovereign immunity was incorporated into our jurisprudence in *In re Constitutionality of Substitute for Senate Bill No. 83,* 21 Colo. 69, 39 P. 1088 (1895). In that case, this court stated "[w]e recognize the doctrine that, without constitutional or legislative authority, the state in its sovereign capacity cannot be sued. No such authority exists in this state." *Id.* at 72, 39 P. at 1088. Though these early cases lack significant analysis and discussion, there is little doubt that they adopted the doctrine of sovereign and governmental immunity as the common law of Colorado.[3] *See Evans v. Board of County Comm'rs,* 174 Colo. 97, 107, 482 P.2d

---

ernment. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts,* § 131, at 1033 (5th ed. 1984).

2. Sovereign immunity in the United States has been justified by an explanation offered by Justice Holmes. "A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law in which that right depends." *Kawananakoa v. Polyblank,* 205 U.S. 349, 353, 27 S.Ct. 526, 527, 51 L.Ed. 834 (1907). Today, public policy offers the primary justifica-

tion for the retention of sovereign immunity. *See Lee v. Colorado Dept. of Health,* 718 P.2d 221, 228 (Colo.1986).

3. We recognize that some exceptions to the doctrine of immunity were created both legislatively, *see* 1963 C.R.S. § 36–1–1(1)(b), and judicially, *see Boxberger v. State Highway Dept.,* 126 Colo. 438, 250 P.2d 1007 (1952). For purposes of this brief discussion, however, it is reasonable to conclude that the general common law rule, at least prior to 1971, was immunity.

968, 973 (Colo.1971) (Kelley, J., dissenting) ("Regardless of whether the courts erred in adopting the doctrine [of immunity], it has been the law of this state since its beginning.").[4]

In 1971, however, this court decided a trilogy of cases that fundamentally altered the common law of Colorado regarding the doctrine of sovereign immunity. *Evans,* 174 Colo. 97, 482 P.2d 968 (1971); *Flournoy v. School Dist.,* 174 Colo. 110, 482 P.2d 966 (1971); *Proffitt v. State,* 174 Colo. 113, 482 P.2d 965 (1971).[5] Indeed, determining that the doctrine of sovereign and governmental immunity is unjust and inequitable, this court prospectively abrogated the doctrine, stating

> [t]he effect of this opinion and its two contemporaries is simply to *undo what this court has done* and leave the situation where it should have been at the beginning, or at least should be now: in the hands of the General Assembly of the State of Colorado. If the General Assembly wishes to restore sovereign immunity and governmental immunity in whole or in part, it has the authority to do so.

*Evans,* 174 Colo. at 105, 482 P.2d at 972 (emphasis added). This language leaves little doubt that the *Evans* trilogy abrogated the common law doctrine of sovereign and governmental immunity, and thereafter, the common law no longer included the doctrine of immunity.[6]

In response to the *Evans* trilogy, the legislature passed the GIA. *See* Ch. 323, sec. 1, §§ 130–11–1 to –17, 1971 Colo.Sess.Laws 1204, 1204–11. The GIA legislatively restored the doctrine of sovereign and governmental immunity and also carved out a limited number of exceptions waiving immunity for various governmental acts. Ch. 323, sec. 1, § 130–11–6(1), 1971 Colo.Sess.Laws 1204, 1206.

With this brief history in mind, we can now remedy the inconsistency that has arisen in our opinions regarding the relationship between the GIA and the common law. The first case stating that the GIA is in derogation of the common law is *Stephen v. City & County of Denver,* 659 P.2d 666, 668 n. 3 (Colo.1983). Specifically, the *Stephen* court stated:

> The Colorado Governmental Immunity Act was a response to three Colorado Supreme Court decisions that prospectively overruled prior decisions recognizing a defense of governmental immunity in tort actions.... These decisions held that the legislature had authority to restore the doctrine in whole or in part. Thus, the Colorado Governmental Immunity Act is in derogation of the common law, and the legislative grants of immunity must be strictly construed.

*Id.* (citations omitted). The *Stephen* court correctly recognized that *Evans* created a new common law in which the doctrine of immunity no longer existed and that the GIA was enacted in derogation of the holding in *Evans. See also State v. Moldovan,* 842 P.2d 220, 222 (Colo.1992); *Willer v. City of Thornton,* 817 P.2d 514, 518 (Colo.1991); *City of Aspen v. Meserole,* 803 P.2d 950, 955 (Colo. 1990); *State v. Hartsough,* 790 P.2d 836, 838 (Colo.1990). In contrast, the first case to state that exceptions to sovereign immunity are in derogation of the common law is *Bloomer v. Board of County Commissioners,* 799 P.2d 942, 946 (Colo.1990). In reaching

---

4. Though not mentioned in any of the early cases espousing the doctrine of sovereign immunity, it is true that as early as 1868, there was legislation stating that "[t]he common-law of England, so far as the same is applicable and of a general nature, ... shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority." 1868 Revised Statutes of Colorado, ch. 16, sec. 1. This statute strengthens the proposition that the common law of Colorado incorporated the English common law doctrine of sovereign immunity.

5. The common law is the body of law that develops through judicial decisions and, though generally followed as *stare decisis,* may be changed to comport with changing social attitudes as well as to avoid injustice. *See Funk v. United States,* 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933); Harlan F. Stone, *The Common Law in the United States,* 50 Harv.L.Rev. 4, 8 (1936).

6. The fact that the ruling was prospective does not alter the fact that as of the date of the *Evans* trilogy, the common law with respect to sovereign immunity was changed. To further demonstrate that fact, it is significant to note that the parties in *Evans, Flournoy* and *Proffitt* were subject to the holding in the *Evans* trilogy.

this conclusion, the *Bloomer* court cited *In re Constitutionality of Substitute for Senate Bill No. 83*, 21 Colo. 69, 39 P. 1088 (1895), which was effectively overruled in the *Evans* trilogy. *Evans*, 174 Colo. at 105, 482 P.2d at 972. The only other case stating that exceptions to the GIA are in derogation of the common law is *Jenks v. Sullivan*, 826 P.2d 825, 827 (Colo.1992). However, to support this proposition, *Jenks* cites only *Bloomer*. Thus, we conclude that *Stephen* and its progeny correctly interpret the relationship between the GIA and the common law, whereas *Bloomer* and *Jenks* do not.

In sum, the doctrine of sovereign and governmental immunity was part of the common law of Colorado until 1971 when this court abrogated the doctrine in the *Evans* trilogy. Thereafter, the legislature restored the doctrine and authorized a limited number of exceptions. Thus, it is apparent that the immunity created by the GIA is in derogation of the common law established in the *Evans* trilogy and must be strictly construed. *See* 3 Norman J. Singer, *Sutherland Statutory Construction* § 61.01 (5th ed. 1992) (discussing strict construction of statutes in derogation of the common law). To the extent that *Bloomer* and *Jenks* differ with this opinion, they are overruled.

## II

We turn now to the facts of this case and the interpretation of the motor vehicle exception to the GIA. On the morning of June 26, 1989, an employee of the Board of County Commissioners of Park County (Board) was operating a road grader on a highway near Guanella Pass in Park County, Colorado. That same morning, Cheryl Bertrand (Bertrand), her children and a friend, were riding horses on a path adjacent to Guanella Pass Road in Park County. The horses were spooked by the noise of the road grader as it passed by the group, and as a result, Bertrand was thrown from her horse and was injured. Subsequently, she filed a complaint against the Board, claiming that the road grader was being negligently operated at an excessive speed, which caused her horse to bolt, and consequently, caused her accident. The Board asserted governmental immunity

as an affirmative defense. Thereafter, the Board moved for judgment on the pleadings, arguing that a road grader is not a "motor vehicle" within the motor vehicle exception to immunity, *see* § 24–10–106(1)(a), and that Bertrand's claim is barred by the GIA. The trial court agreed and dismissed the complaint. Relying on *Bain v. Town of Avon*, 820 P.2d 1133 (Colo.App.1991), *cert. denied*, Nov. 25, 1991, the court of appeals affirmed, holding that a road grader is not a "motor vehicle" within the motor vehicle exception to the GIA.

### A

■ The GIA bars any claim against a public entity for injuries that lie in tort or could lie in tort. § 24–10–108, 10A C.R.S. (1988 & 1993 Supp.). Nonetheless, there are a limited number of situations in which the legislature deemed it appropriate to waive the defense of sovereign immunity. *See* § 24–10–106(1)(a)–(f), 10A C.R.S. (1988 & 1993 Supp.). One such situation involves the operation of motor vehicles. This exception provides:

> Sovereign immunity is waived by a public entity in an action for injuries resulting from:
>
> (a) The operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of his employment, except emergency vehicles operating within the provisions of section 42–4–106(2) and (3), C.R.S.

§ 24–10–106(1)(a).

The GIA does not define the term "motor vehicle," nor has this court interpreted that term. The court of appeals, however, has done so. In *Bain v. Town of Avon*, 820 P.2d 1133 (Colo.App.1991), *cert. denied*, Nov. 25, 1991, that court concluded that a backhoe is not a "motor vehicle" for purposes of section 24–10–106(1)(a). In reaching this conclusion, the court turned to definitions contained in the Uniform Motor Vehicle Law. Under that statute, "motor vehicle" is defined as "any self-propelled vehicle which is designed primarily for travel on the public highways and which is generally and commonly used to transport persons and property over the pub-

lic highways...." § 42–1–102(46), 17 C.R.S. (1993). Examining the characteristics of a backhoe, the court determined that the backhoe did not fit within the definition of "motor vehicle," but did conform to the definition of "mobile machinery" or "self-propelled construction equipment." Those terms refer to vehicles "which are not designed primarily for the transportation of persons or cargo over the public highways" and include "wheeled vehicles commonly used in the construction, maintenance, and repair of roadways." § 42–1–102(43), 17 C.R.S. (1993).

▮▮▮ The Board argues that we should apply the definition of "motor vehicle" contained in the Uniform Motor Vehicle Law as did the court of appeals in *Bain*. While the approach taken by the court of appeals is not unreasonable, the interpretation of one statute by reference to an unrelated statute is an unreliable means of ascertaining legislative intent. 2B Norman J. Singer, *Sutherland Statutory Construction* § 53.05, at 238 (5th ed. 1992); *see also Anderson v. Janovich*, 543 F.Supp. 1124, 1129 (W.D.Wash.1982); *Brookshire v. Houston Indep. School Dist.*, 508 S.W.2d 675, 678 (Tex.Ct.App.1974). Indeed, the definitions contained in the Uniform Motor Vehicle Law are tailored to the unique objectives of that law and were not enacted to further the purposes of the GIA. Moreover, the term "motor vehicle" is defined in numerous statutes and the definition is often broader than the definition contained in the Uniform Motor Vehicle Law. *See, e.g.*, § 18–1–901(3)(k), 8B C.R.S. (1986) (motor vehicle "includes any self-propelled device by which persons or property may be moved, carried, or transported from one place to another by land, water, or air"); § 18–4–409(1)(a), 8B C.R.S. (1986) (motor vehicle defined as "all vehicles of whatever description propelled by

any power other than muscular, except vehicles running on rails"); § 40–10–101(3), 17 C.R.S. (1993) (motor vehicle means "any automobile, truck, motor bus, or other self-propelled vehicle or any trailer drawn thereby"); § 42–7–103(8), 17 C.R.S. (1993) (motor vehicle is "every vehicle which is self-propelled, including trailers and semitrailers designed for use with such vehicles and every vehicle which is propelled by electric power obtained from overhead trolley wires but not operated upon rails"). Thus, we conclude that the decision of the *Bain* court to opt for the definitions in the Uniform Motor Vehicle Law finds no basis in the GIA.[7] Consequently, we must turn our attention to the GIA to construe the term "motor vehicle" for purposes of that statute.

B

▮▮ In interpreting the motor vehicle exception, we are guided by accepted principles of statutory construction. Our primary goal is to determine and give effect to the intent of the legislature. *Jones v. Cox*, 828 P.2d 218, 221 (Colo.1992); *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1076 (Colo.1992). To ascertain that intent, statutory terms should be given effect according to their plain and ordinary meaning. *Armintrout v. People*, 864 P.2d 576, 581 (Colo. 1993); *Engelbrecht v. Hartford Accident & Indem.*, 680 P.2d 231, 233 (Colo.1984); *cf.* § 2–4–101, 1B C.R.S. (1980).

▮▮ Though the term "motor vehicle" is not defined in the GIA, it is certainly a term of ordinary and common usage. Thus, we do not think it necessary to adopt a strained and complex definition which would require a trial court to examine the various characteristics of different types of government vehicles to determine if the vehicle in question is a

7. The *Bain* court briefly discussed the sparse legislative history of § 24–10–106(1)(a). What history exists is contained in the Legislative Council Report to the Colorado General Assembly, *Governmental Liability in Colorado*, Research Publication No. 134 (1968). The section discussing the waiver of immunity for the operation of motor vehicles states, "[t]he committee agreed that, with respect to injuries arising from automobile accidents caused by the negligent operation of government-owned motor vehicles, the defense of sovereign immunity should not be available to a public entity." *Id.* at 136. In addition, in the Committee Recommendations, the paragraph discussing the waiver of immunity for government owned motor vehicles is captioned "automobile accidents." *Id.* at xxi. However, the words "automobile" and "motor vehicle" are both used in the report. In addition, the legislation, as enacted, makes no reference to the word "automobile." Thus, the legislative history is not helpful in construing the term "motor vehicle."

"motor vehicle" for purposes of section 24–10–106(1)(a). Rather, we believe it is fair to assume that the legislature intended the plain and ordinary meaning of "motor vehicle" to attach to that term as it appears in the GIA. Thus, for purposes of the GIA, we believe that a "motor vehicle" includes any "vehicle on wheels having its own motor and not running on rails or tracks, for use on streets or highways." *Webster's New World Dictionary of the American Language* 930 (2d College ed. 1974).

We believe this construction is compatible with, and supported by, our prior conclusion that the GIA, being in derogation of the common law, is to be strictly construed. *See, e.g., State v. Moldovan,* 842 P.2d 220, 222 (Colo.1992); *Willer v. City of Thornton,* 817 P.2d 514, 518 (Colo.1991). Moreover, we believe this construction advances one of the purposes of the GIA—to allow persons injured by a motor vehicle owned or leased by a public entity to seek compensation. *Cf. Moldovan,* 842 P.2d at 222 ("one of the basic but often overlooked purposes of the Governmental Immunity Act—[is] to permit a person to seek redress for personal injuries caused by a public entity").

Accordingly, we reverse the decision of the court of appeals and remand with directions to return the case to the trial court for further proceedings consistent with this opinion.