51 F.3d 285
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 CHUBB GROUP OF INSURANCE COMPANIES, Michael Ovitz, Judy
Ovitz, Plaintiffs-Appellants,
v.
SNOWMASS WILDCAT FIRE PROTECTION DISTRICT, Snowmass Wildcat
Fire Department, Cottle, Graybeal, Yaw Architects,
Ltd., Defendants-Appellees.
 No. 94-1069.
 United States Court of Appeals, Tenth Circuit.
 March 21, 1995.
As Amended on Denial of Rehearing April 20, 1995.
 
 Before KELLY, BARRETT and HENRY, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 Chubb Group of Insurance Companies (Chubb) and Michael and Judy Ovitz (Ovitz), appellants, appeal from a judgment of the district court granting summary judgment in favor of appellees, Snowmass Fire Protection District and Snowmass Wildcat Fire Department, collectively hereinafter referred to as Snowmass, and the motion to dismiss filed by appellee Cottle, Graybeal, Yaw Architects, Ltd. (Cottle). The court dismissed appellants' action and third amended complaint with prejudice.
 
 
 3
 Ovitz owned a home in Snowmass Village, Colorado, insured by Chubb. On September 28, 1990, Snowmass was testing fire hydrants in the area of the Ovitz home. The hydrants are tested from time to time by discharging a large volume of water over a period of several minutes to insure that adequate water pressure and volume are available when needed to fight fires. The Ovitz home was flooded when water discharged from a hydrant flowed into a borrow ditch and downhill into the home. The flooding caused approximately $190,000 in property and consequential damage to the home.
 
 
 4
 Chubb brought this action against Snowmass, Cottle, and Paul Scrivens, a landscaper with whom it settled, seeking to recover the money paid to Ovitz to repair the home. Ovitz joined in the action seeking to recover $1,000, the amount they were personally required to pay pursuant to the deductible provision of their insurance policy. Appellants alleged that Snowmass was negligent in releasing water from the hydrant during the testing process by failing to ascertain in advance where the water would go upon discharge and by failing to prevent the water from flooding the Ovitz home. Appellants also alleged a single claim of professional negligence against Cottle.
 
 
 5
 Snowmass moved for summary judgment on the basis that it was immune from liability under the Colorado Governmental Immunity Act (Act), 10A C.R.S. 24-10-101, et seq. (1988). Cottle moved to dismiss on the basis that appellants had failed to comply with the requirements of 6A C.R.S. 13-20-602 (1989). The district court agreed and granted both motions.
 
 
 6
 On appeal, appellants contend that the district court erred in granting Snowmass' motion for summary judgment and Cottle's motion to dismiss.
 
 I.
 
 7
 Appellants contend that the court erred in granting Snowmass' motion for summary judgment. We review the grant or denial of a motion for summary judgment de novo, applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c). Ingels v. Thiokol Corp., 42 F.3d 616, 620 (1994). Under Rule 56(c), summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. Id.
 
 
 8
 Appellants argue that Snowmass could not assert the protection of the Act because governmental immunity was statutorily waived and because Snowmass expressly waived its right to assert immunity.
 
 
 9
 a.
 
 
 10
 Appellants contend that governmental immunity was statutorily waived under 24-10-106(1)(e) and (f) of the Act which provide:
 
 
 11
 Sovereign immunity is waived by a public entity in an action for injuries resulting from:
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 (e) A dangerous condition[1] of any public hospital, jail, public facility located in any park or recreation area maintained by a public entity, or public water, gas, sanitation, electrical, power, or swimming facility....
 
 
 15
 (f) The operation and maintenance of any public water facility, gas facility, sanitation facility, electrical facility, power facility, or swimming facility by such public entity (footnote added).
 
 
 16
 Appellants contend that "a waiver of immunity occurs here if it would first be concluded that the Snowmass Village hydrant system constituted a public water facility and that at the time of the incident, Snowmass was (1) 'operating' the hydrant system, or (2) 'maintaining' the system, or (3) 'using' the hydrant system in such a way as to pose unreasonable risk to the public." (Appellants' Opening Brief at 9). Appellants argue that "[a]ny of these activities would suffice to trigger the waiver." Id.
 
 
 17
 In Colorado, grants of sovereign immunity, being in derogation of the common law, are to be strictly construed. Bertrand v. Board of County Comm'rs, 872 P.2d 223, 227 (Colo. 1994). However, in interpreting exceptions to sovereign immunity, as in our case here, "[o]ur primary goal is to determine and give effect to the intent of the legislature." Id. at 228. To ascertain the intent of the legislature, statutory terms should be given effect according to their plain and ordinary meaning. Id. See also Willer v. City of Norton, 817 P.2d 514, 518 (Colo. 1991) (where the language of the statute is plain and its meaning clear, "forced, strained or unusual interpretations should never be employed)"; Jones v. City & County of Denver, 833 P.2d 870, 872 (Colo. App. 1992) (words should be given their ordinary meaning and a word's commonly accepted meaning should be preferred.
 
 
 18
 We hold that the district court properly applied these principles in rejecting appellants' contention that the testing of the fire hydrant constituted the operation, maintenance, or use of a public water facility which precipitated a statutory waiver of immunity under 24-10-106(1)(e) and (f). The district court found/ruled:
 
 
 19
 Although Snowmass certainly 'used' the fire hydrant at issue in this case, this does not constitute a dangerous condition which is 'proximately caused by the negligent act or omission of the public entity in constructing or maintaining' the hydrant. Further, I cannot conclude the testing of the hydrant constituted an 'unreasonable risk to the health and safety of the public.' Accordingly, I conclude that 24-10-106(1)(e) does not apply to waive Snowmass' immunity.
 
 
 20
 Second, plaintiffs argue that Snowmass was operating a public water facility pursuant to 24-10-106(1)(f). Section 24-10-106(1)(f) provides that sovereign immunity is waived by a public entity in an action for injuries resulting from 'the operation and maintenance of any public water facility ... by such public entity.' 24-10-106(1)(f). Snowmass argues that this exception should not apply to it because it is not the public entity with the authority to 'operate and maintain' the public water facility. It is undisputed that the Snowmass Water and Sanitation District is charged with the operation and maintenance of the public water facility. Snowmass admits that it was 'using' the fire hydrant at issue. I conclude that Snowmass' testing of the fire hydrant does not qualify as 'operation and maintenance' of a public water facility as contemplated by the statute. Accordingly, I conclude as a matter of law that neither 24-10-106(1)(e) nor (f) applies to waive sovereign immunity in this case....
 
 
 21
 (Appellants' Opening Brief, Appendix at 7) (emphasis added).
 
 
 22
 We agree with the district court that neither 24-10-106(1)(e) or (f) gave rise to a waiver of sovereign immunity.
 
 
 23
 Sovereign immunity is waived under 24-10-106(1)(e) "for injuries resulting from ... a dangerous condition of any public ... water ... facility." A dangerous condition is a condition or use of a facility "which constitutes an unreasonable risk to the health or safety of the public, which is known to exist ... and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility...." 24-10-103(1). We agree with the district court that the testing of the hydrant did not constitute a dangerous condition or an unreasonable risk to the health or safety of the public under the Act.[2]
 
 
 24
 Sovereign immunity is also waived under the Act for injuries resulting from "[t]he operation and maintenance of any public water facility." 24-10-106(1)(f) (emphasis added). Here, "[i]t is undisputed that the Snowmass Water and Sanitation District is charged with the operation and maintenance of the public water facility." (Appellants' Opening Brief, Appendix at 7). As such, a waiver of sovereign immunity under 24-10-106(1)(f) for injuries resulting from the operation and maintenance of the Snowmass Village public water facility would be limited to actions brought against the Snowmass Water and Sanitation District, which is not a party here.
 
 
 25
 b.
 
 
 26
 Appellants contend that Snowmass expressly waived its right to assert sovereign immunity in this case.
 
 
 27
 Colorado law permits a public entity to waive its right to sovereign immunity. 10A C.R.S. 24-10-104 (1988) provides:
 
 
 28
 Waiver of Sovereign Immunity. Notwithstanding any provision of law to the contrary, the governing body of a public entity, by resolution, may waive the immunity granted in 24-10-106 for the types of injuries described in the resolution....
 
 
 29
 Appellants argue that Snowmass waived its right to assert sovereign immunity when it adopted "Section 5. Declaration of Indemnification" in its by-laws. Section 5 provides:
 
 
 30
 Having in mind the public policy ... to protect those performing governmental services on behalf of political subdivisions against specified risks and to protect individuals from specified injuries and damages resulting therefrom ... [we] hereby declares that the District will defend, save harmless and indemnify any officer, agent or employee, whether elective or appointive, against any tort or professional liability claim or demand, whether groundless or otherwise, arising out of any alleged act or omission occurring in the performance of duty; that the District will compromise and settle any such claim or suit and pay the amount of any settlement or suit and the amount of any settlement or judgment rendered thereon.
 
 
 31
 (Appellants' Opening Brief, Appendix at 5).
 
 
 32
 Appellants argue that Snowmass, in adopting Section 5, expressly waived any sovereign immunity it might otherwise have enjoyed as a public entity. The district court rejected this argument, finding/concluding:
 
 
 33
 I disagree that this section [Section 5] waives immunity. The purpose of this section is only to make clear that Snowmass undertakes to defend and indemnify its officers, agents or employees who might be unfortunate enough to be named in a lawsuit 'whether groundless or otherwise.' Nothing in section 5 states that Snowmass is waiving its governmental immunity.
 
 
 34
 Id. at 5.
 
 
 35
 We agree with the district court that nothing in "Section 5. Declaration of Indemnification" constitutes a waiver of sovereign immunity.
 
 II.
 
 36
 Appellants contend that the district court erred in granting Cottle's motion to dismiss. We review the grant or denial of a motion to dismiss de novo. Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 870 (10th Cir.1990). A motion to dismiss is properly granted when it appears beyond doubt that the plaintiff could prove no set of facts entitling it to relief. Id.
 
 
 37
 Appellants argue that the district court's dismissal of their professional negligence claim against Cottle pursuant to 6A C.R.S. 13-20-602 was premature because it had not been established that expert testimony would be required. We disagree.
 
 
 38
 Under 13-20-602, "(1) [i]n every action for damages ... based upon the alleged professional negligence of a licensed professional, the plaintiff's ... attorney shall file with the court a certificate of review ... within sixty days after the service of the complaint ... unless the court determines that a longer period of time is necessary for good cause shown .... (3) declaring ... [t]hat the attorney has consulted a person who has expertise in the area of the alleged misconduct; and ... [t]hat the professional ... has concluded that the filing of the claim ... does not lack substantial justification...." 6A C.R.S. 13-20-602 (emphasis added). Section 13-20-602(4) provides that the "failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint, counterclaim, or cross claim." 6A C.R.S. 13-20-602 (emphasis added).
 
 
 39
 Here, it is uncontested that: appellants' third amended complaint asserted a single claim of damages for professional negligence against Cottle, a Colorado corporation which provided certain professional architectural services with respect to the design of the Ovitz home, (Appellants' Opening Brief, Appendix at 8); the "basis for the claim against Cottle [was] that as designers of improvements on the property, Cottle should have insured that steps had been taken to divert all drainage water away from the residence," id. at 11; the district court specifically found that "expert testimony is necessary in [Ovitz'] claim against Cottle to establish both Cottle's applicable standard of care and whether or not Cottle breached that standard," id.; appellants did not file a certificate of review nor a motion for an extension of time within sixty days after the service of their third amended complaint, as required by 13-20-602.
 
 
 40
 Under these circumstances, we hold that the district court did not err in granting Cottle's motion to dismiss.
 
 
 41
 AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 The Act defines "dangerous condition" as a "physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility.... A dangerous condition shall not exist solely because the design of any facility is inadequate." 24-10-103(1)
 
 
 [2]
 There was no claim of an agency relationship between appellee Snowmass and Snowmass Water and Sanitation District