2014 CO 15

**CITY AND COUNTY OF DENVER, and Alex J. Martinez, in his official capacity as Manager of Safety for the City and County of Denver, Petitioners**

v.

**DENVER FIREFIGHTERS LOCAL NO. 858, IAFF, AFL–CIO, Respondent**

**Supreme Court Case No. 12SC736**

Supreme Court of Colorado.

March 3, 2014

Attorneys for Petitioners: Douglas J. Friednash, City Attorney, City and County of Denver, Robert D. Nespor, Assistant City Attorney, Franklin A. Nachman, Assistant City Attorney, Denver, Colorado.

Attorneys for Respondent: Buescher, Kelman, & Perera, P.C., Thomas B. Buescher, Denver, Colorado.

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶ 1 We granted certiorari to consider an issue of first impression: whether a proposed amendment to the fire department's disciplinary system is subject to collective bargaining under the Charter of the City and County of Denver ("Charter").[1]  *See Denver, Colo., Code of Ordinances* tit. I, subtit. B (2013). Construing the plain language of the Charter to create a harmonious and sensible whole, we hold that the City and County of Denver has authority to both draft and implement disciplinary rules and that this authority is not limited by the Denver firefighters' right to engage in collective bargaining. Accordingly, we reverse the judgment of the court of appeals because the court of appeals erroneously concluded that discipline is a term and condition of employment under the Charter and therefore subject to collective bargaining. *See Denver Firefighters Local*

---

1. We specifically granted certiorari to review the following issue:

    Whether the court of appeals erred when it concluded that the City and County of Denver's proposed amendment to the fire department's disciplinary system constituted a term and condition of the employment subject to the collective bargaining provisions of the Denver City Charter.

*No. 858 v. City & Cnty. of Denver*, 2012 COA 138, ¶¶ 22–24, 292 P.3d 1101. We remand to the trial court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶ 2 Respondent Denver Firefighters Local No. 858, IAFF, AFL–CIO ("Firefighters"), is the exclusive bargaining agent for firefighters who are employed by Petitioner City and County of Denver and supervised by Petitioner Manager of Safety (collectively "City"). The Firefighters and the City have had a collective bargaining agreement in place since 1971,[2] when an amendment to the Charter first granted firefighters the right to collectively bargain over working conditions. In 2010, the City unilaterally (i.e., without bargaining) attempted to change the Charter's existing disciplinary system governing firefighter conduct. Specifically, the City sought to create and implement a discipline matrix, which lists prohibited conduct along with corresponding disciplinary sanctions that are progressively harsher based on the severity and frequency of the misconduct.

¶ 3 Following multiple unsuccessful attempts to engage the City in bargaining over the proposed discipline matrix, the Firefighters filed suit in Denver District Court. The Firefighters alleged that the City violated the parties' Collective Bargaining Agreement ("Agreement") then in effect[3] when it unilaterally decided to create the discipline matrix. In order to preserve their rights until a trial on the merits, the Firefighters sought a preliminary injunction to prevent the City from moving forward with its plan to add the discipline matrix to the Charter.

¶ 4 The trial court conducted a hearing to determine whether the Firefighters could establish their entitlement to a preliminary injunction. It ultimately issued the injunction, finding, among other things, that the Firefighters had demonstrated a reasonable probability of success on the merits.[4] Although the trial court acknowledged that the City had a right to *implement* disciplinary rules under the Charter, it concluded that the discipline matrix was subject to collective bargaining because the City did not have a right to unilaterally *draft* disciplinary rules under the Charter.

¶ 5 The City appealed, arguing that the trial court erred in finding that the Firefighters had demonstrated a reasonable probability of success on the merits. According to the City, the Firefighters' claim that the discipline matrix was subject to collective bargaining failed as a matter of law because the Charter expressly vests the City with authority to unilaterally draft disciplinary rules. The court of appeals disagreed with the City and affirmed the trial court's preliminary injunction ruling. *Denver Firefighters,* ¶¶ 22, 53–54.

¶ 6 The City appealed again, and we granted certiorari review.

## II. Standard of Review

¶ 7 The court of appeals' determination that the discipline matrix is a term and condition of employment that is subject to collective bargaining hinges on the court of

2. Several collective bargaining agreements have been negotiated and executed since 1971 due to the mandatory time limit on negotiated agreements under the Charter. See Charter, art. IX, § 9.7.5 (requiring that a negotiated agreement be in effect for at least one year but not more than three years).

3. The relevant Agreement was valid from January 1, 2010 through December 31, 2012. Agreement, art. XXIV (Effective date, ratification and termination).

4. In *Rathke v. MacFarlane,* 648 P.2d 648, 653–54 (Colo.1982), this Court outlined six prerequisites that a moving party *must* satisfy before a trial court may exercise its discretion and issue a preliminary injunction. To comply with *Rathke,* a trial court must find that the moving party successfully demonstrated that:

1) the action has a reasonable probability of success on the merits;
2) a danger of real, immediate, and irreparable injury exists that may be prevented by injunctive relief;
3) there is no plain, speedy, and adequate remedy at law;
4) there is no disservice to the public interests if the injunction is granted;
5) the balance of equities favors the injunction; and
6) the injunction will preserve the status quo pending a trial on the merits.
*Id.*

appeals' interpretations of the Charter and the parties' Agreement. Because municipal ordinance interpretation and contract interpretation present questions of law, *see MDC Holdings, Inc. v. Town of Parker,* 223 P.3d 710, 717 (Colo.2010); *Agritrack, Inc. v. DeJohn Housemoving, Inc.,* 25 P.3d 1187, 1192 (Colo.2001), we review the judgment of the court of appeals de novo, see *Lucero v. People,* 2012 CO 7, ¶ 19, 272 P.3d 1063 ("We review questions of law de novo.").

### III. Analysis

¶ 8 Resolution of this case turns on the parties' respective rights under the Charter, which supersede contrary terms in the Agreement in all respects. *See* Agreement, art. 1, § 1 ("This Agreement shall in all respects ... be subject and subordinate to the provisions of the [Charter]."). The City argues that the discipline matrix *is not* subject to collective bargaining because the Charter vests the City with authority to unilaterally draft and implement disciplinary rules. In contrast, the Firefighters argue that the discipline matrix *is* subject to collective bargaining because discipline is a term and condition of employment and the Charter grants firefighters the right to bargain over terms and conditions of employment.

¶ 9 To evaluate the merits of these arguments, we start by determining whether the City possesses authority to unilaterally draft disciplinary rules. In order to decipher the extent of the City's authority over discipline, we focus on section 9.4.13—the only Charter provision that affirmatively addresses the fire department's rules of conduct. Because we conclude that section 9.4.13 vests the City with authority to both draft and implement disciplinary rules, we next determine whether the Firefighters' right to engage in collective bargaining curbs the City's authority by looking to section 9.7.3—which establishes the Firefighters' right to collectively bargain and the scope of that right. Because section 9.7.3 does not explicitly bring the topic of discipline within the ambit of collective bargaining, we conclude that the Firefighters' right to bargain does not limit the City's express authority to draft and implement disciplinary rules under the Charter. Final-

ly, we look to the terms of the Agreement as an auxiliary source of evidence that firefighter discipline is not subject to collective bargaining.

¶ 10 We employ the rules of statutory construction to guide our interpretation of the Charter. *See Cook v. City & Cnty. of Denver,* 68 P.3d 586, 588 (Colo.App.2003) ("The general rules of statutory construction apply to municipal charters."). Because charters "confer only the powers expressed or necessarily implied," we strictly construe charter language. *Id.* "When a charter is unambiguous, we will not alter the plain meaning." *Id.* Just as we favor interpretations that give harmonious and sensible effect to all parts of a charter, we avoid interpretations that yield absurd or unreasonable results. *See id.; see also People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986) ("If separate clauses within a statute may be reconciled by one construction but would conflict under a different interpretation, the construction which results in harmony rather than inconsistency should be adopted."); *AviComm, Inc. v. Colo. Pub. Util. Comm'n,* 955 P.2d 1023, 1031 (Colo.1998) ("[A] statutory interpretation that ... leads to an absurd result will not be followed.").

### A. The City Has Authority to Both Draft and Implement Disciplinary Rules

¶ 11 Turning first to section 9.4.13 of the Charter to determine the extent of the City's authority with regard to disciplinary rules, we begin our analysis by reading words and phrases in context, section 2–4–101, C.R.S. (2013), and according them their plain and ordinary meanings, *Bertrand v. Bd. of Cnty. Commr's,* 872 P.2d 223, 228 (Colo. 1994). Section 9.4.13—the only Charter provision that addresses the Fire Department's rules of conduct—provides that:

> The rules governing the conduct of members of the Classified Service in the Fire and Police Departments shall be *set forth* as written rules and regulations *by the Chief* of each of the respective departments with the approval of the Manager of Safety, provided, however, that such rules and regulations shall not contain any politi-

cal or religious qualifications or disqualifications. Any member of the Classified Service shall be subject to reprimand, discharge, reduction in grade, fine and/or suspension for a violation of such rules and regulations.

(Departmental rules of conduct) (emphasis added). As the unambiguous language of the first sentence makes clear, the Fire Chief[5] has authority to "set forth written rules and regulations" relating to discipline. Importantly, the Fire Chief's authority is subject to two explicit constraints: (1) the Manager of Safety's approval, and (2) a prohibition against rules that contain "political or religious qualifications or disqualifications." Considering these constraints against the backdrop of authority conferred by the "set forth" language, we conclude that the phrase "set forth" in section 9.4.13 gives the Fire Chief authority to both draft new disciplinary rules and implement existing disciplinary rules.

¶ 12 The first constraint supports our conclusion that the Charter vests the Fire Chief with authority to substantively manipulate the rules of conduct because mandatory oversight by the Manager of Safety would be superfluous if the Fire Chief's authority was limited to mere implementation of existing disciplinary rules. Indeed, if the Fire Chief did not have authority to draft disciplinary rules, the approval eventually rendered by the Manager of Safety would prove to be little more than an empty bureaucratic formality. To give practical significance to the Manager of Safety's approval, we conclude that section 9.4.13 at once vests the Fire Chief with broad authority to draft disciplinary rules and tempers the Fire Chief's authority by establishing an institutional safeguard against potential abuse.

¶ 13 The second constraint is further evidence that the Charter vests the Fire Chief with authority to draft disciplinary rules because the inclusion of the prohibition presupposes the Fire Chief's authority to create rules that improperly reward or punish employees based on their political or religious views. Because a prohibition only has pragmatic effect if it restricts the exercise of authority that would otherwise exist in the absence of the prohibition, the second constraint in section 9.4.13 would be rendered functionally meaningless if the Fire Chief did not possess rule-making authority in the first instance. Thus, in order to give the two constraints under section 9.4.13 sensible effect, we conclude that the Fire Chief has authority to both draft and implement disciplinary rules.

## B. The Firefighters' Right to Bargain Does Not Limit the City's Authority

¶ 14 Having determined that the City[6] possesses authority to draft and implement disciplinary rules pursuant to section 9.4.13, we next determine whether the Firefighters' right to bargain pursuant to section 9.7.3 restricts the City's authority. Section 9.7.3—the specific Charter provision that establishes the Firefighters' right to collectively bargain and specifies the topics that are subject to collective bargaining—provides that:

*Firefighters shall have the right to bargain collectively* with the City and County of Denver and to be represented by an employee organization in such collective bargaining *as to* wages, rates of pay, hours, grievance procedure, working conditions, and *all other terms and conditions of employment*, except the table of organization of the Fire Department and except pensions.

(Right to organize and bargain collectively) (emphasis added). The topic of discipline is conspicuously absent from section 9.7.3, as is any reference to section 9.4.13. Without any express language bringing discipline into the ambit of collective bargaining, we will not

---

5. Although section 9.4.13 is a general provision that applies to both the fire department and the police department, we limit our analysis to the impact that section 9.4.13 has on the fire department.

6. Although the Fire Chief is the specific managerial actor vested with rule-making authority under section 9.4.13 (subject, of course, to the Manager of Safety's approval), we attribute this authority to the City (i.e., management) more broadly in order to align our analysis with the issue presented.

infer that the discipline matrix is subject to bargaining merely because the phrase "terms and conditions of employment" is undefined [7] and could conceivably encompass disciplinary rules. Such an inference is unwarranted for two reasons.

¶ 15 First, inferring that the discipline matrix is subject to bargaining in the absence of express language would result in this Court willfully ignoring other Charter provisions that create a comprehensive discipline framework completely independent of collective bargaining. When viewed together, sections 9.4.13 through 9.4.17 produce a complete—and self-contained—framework for addressing matters related to firefighter discipline. See § 9.4.13 (Departmental rules of conduct) (establishing the Fire Chief's authority to draft and implement disciplinary rules and outlining the types of disciplinary action that can be taken against firefighters); § 9.4.14, (Disciplinary procedures) (detailing the disciplinary procedures that the City must follow whenever it initiates disciplinary action against a firefighter); § 9.4.15 (Review of disciplinary actions) (detailing the procedure for review of disciplinary actions taken against firefighters); § 9.4.16 (Suspension pending investigation) (detailing the Fire Chief's authority to suspend firefighters pending the initiation of disciplinary action and any related investigation); § 9.4.17 (Suspension upon filing of indictment or information) (detailing the Fire Chief's authority to suspend firefighters who are formally charged with committing any felony). Significantly, the term "collective bargaining" is wholly absent from these provisions as they relate to firefighters, as is any reference to sections 9.7.1 through 9.7.14, the Charter provisions relating specifically to firefighter collective bargaining.

¶ 16 Second, inferring that discipline is a term and condition of employment under section 9.7.3 would require this Court to unnecessarily adulterate the express language of section 9.4.13 vesting the City with authority to draft disciplinary rules. Absent clear Charter guidance regarding the meaning and scope of the phrase "terms and conditions of employment," we refuse to read words into section 9.4.13 that would vitiate other express provisions of the Charter. Embracing our mandate to strictly construe the Charter and to favor constructions that yield harmonious results, we hold that the Firefighters' right to bargain under section 9.7.3 does not limit the City's authority to create disciplinary rules under section 9.4.13.

## C. The Agreement Is Further Evidence That Discipline Is Not Subject to Collective Bargaining

¶ 17 Our conclusion that the City possesses rule-making authority that is not constrained by the Firefighters' right to bargain is reinforced by the terms of the Agreement. The plain language of the Agreement indicates that discipline exists outside the ambit of collective bargaining for two reasons. First, discipline is explicitly excluded from the Agreement's grievance procedure, which is the only avenue for redress available to aggrieved firefighters who believe that the City has violated its contractual obligations under the Agreement. See Agreement, art. XV (Grievance procedure). Importantly, "grievance" is defined as "a claim that the City has violated an express provision of [the] Agreement, and *does not include any disciplinary matters.*" Id. at § 1 (emphasis added). As this language makes unequivocally clear, issues relating to firefighter discipline are never capable of redress through the Agreement's grievance procedure. Because the grievance procedure is the *only* way a firefighter can assert a claim against the City for violating the terms of the Agreement, it follows that anything that is excluded from this procedure is also not subject to collective bargaining. Indeed, a contrary conclusion would permit the parties to include terms in the Agreement that are never capable of enforcement. Thus, the parties' decision to bar discipline from the grievance procedure indicates that discipline is not subject to collective bargaining.

---

**7.** The Charter does not define "terms and conditions of employment," nor has this Court had occasion to fully resolve the meaning of the term.

¶ 18 Second, the City affirmatively retained broad rights under the Agreement. See Agreement, art. VI (Rights of management). The breadth of the City's rights is revealed in the first sentence of Article VI:

> Except as otherwise specifically provided in this Agreement, the City has the sole and exclusive right to exercise all the rights or functions of management and the exercise of any such rights or functions shall not be subject to any grievance procedure, except as to resolution of whether or not a specific matter is a management right.

*Id.* at § 1. This language illustrates that the expansive rights retained by the City under the Agreement are constrained only by express terms to the contrary. Accordingly, where the Agreement is silent with regard to a specific management right, we assume that the City has retained authority over that right. Because the Agreement does not contain any provisions that expressly deprive the City of authority over discipline,[8] we therefore conclude that the City retains authority over discipline. Moreover, by explicitly excluding all rights and functions of management from the grievance procedure, Article VI (Rights of management) dovetails with Article XV (Grievance procedure) of the Agreement to further buttress our conclusion that discipline was excluded from the grievance procedure because discipline exists outside of collective bargaining. When considered together, the plain language of Article VI and Article XV demonstrates that discipline is but one of the many "rights or functions of management" under Article VI. Thus, the broad management rights affirmatively retained by the City under the Agreement bolster our conclusion that the City possesses authority to unilaterally draft disciplinary rules under the Charter.

## IV. Conclusion

¶ 19 Interpreting the plain language of the Charter to create a harmonious and sensible whole, we hold that the City has authority to unilaterally draft and implement disciplinary rules and that this authority is not limited by the Firefighters' right to engage in collective bargaining. Accordingly, we reverse the judgment of the court of appeals because the court of appeals improperly held that discipline is a term and condition of employment that is subject to collective bargaining. We remand to the trial court for proceedings consistent with this opinion.

JUSTICE MÁRQUEZ does not participate.

---

8. In addition to Article XV, which excludes discipline from the grievance procedure, disciplinary matters are explicitly mentioned in two other places of the Agreement: Article IV (Union activity) and Article VIII (Call back compensation, firefighter obligation, and overtime). Both references indicate that disciplinary matters should be resolved under the terms of the Charter, suggesting that the parties did not consider discipline a subject of collective bargaining. *See* Agreement, art. IV, § 1 (stating that firefighters who intimidate, interfere with, or coerce other firefighters will be subject to "disciplinary action pursuant to the City Charter"); *Id.*, art. VIII, § 1 (stating that firefighters who are personally contacted and thereafter fail to report for duty will be subject to "disciplinary action pursuant to the Charter of the City" unless excused from reporting).