No. 27859

**South of Second Associates, a partnership, Ketchum, Konkel, Barrett, Nickel, Austin, Inc., a Colorado corporation; William C. Holmes; Robert E. Eckels, and Richard W. Eckels v. Georgetown, Colorado, a municipal corporation; Brent W. Kruger, being the present Police Judge of Georgetown, Colorado; James C. Abbott, Jr., Ron Neely, Thomas L. Briddle, Jerry B. Buckley, William C. Thaxton, Kenneth E. Kessler, being and constituting the present Board of Selectmen of Georgetown, Colorado; Jerry B. Buckley, Henry K. Anderson, Robert J. Gretencourt, Cynthia C. Wadsworth, Elizabeth Glenn, Harold D. Haskins, Robert Gibbs, being and constituting the present Historical Preservation Commission of Georgetown, Colorado; Orion C. Shockley and Helen Rockwell, as prior members of the Board of Selectmen of Georgetown, Colorado; and Robert Terry, the present Building Inspector of Georgetown, Colorado**

(580 P.2d 807)

Decided July 10, 1978.

Richard E. Young, Frederick J. Lockhart, Jr., for plaintiffs-appellees and cross-appellants.

Bradley, Campbell & Carney, Daniel T. Moyle, Jr., for defendants-appellants and cross-appellees.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Georgetown is a municipal corporation created by the Colorado Territorial legislature in 1868. The town and surrounding area are rich in the culture and history of early Colorado. In 1966, the National Park Service of the U.S. Department of the Interior designated the Georgetown/Silver Plume area as a registered National Historic Landmark District.

On May 18, 1970, the Board of Selectmen of Georgetown enacted Ordinance No. 205. The ordinance amended Georgetown's existing zoning ordinance by creating a Historic Preservation District (District) and a seven-member Historic Preservation Commission (Commission). The District boundaries encompassed all real property within the municipal limits of Georgetown. The District also overlaid all existing zoning districts. It did not affect permitted uses within existing zoning districts but did require that a certificate of appropriateness be obtained from the Commission prior to the construction or alteration of any structure within the

District. Ordinance No. 205 was amended on August 12, 1970, by Ordinance No. 206, which provided an appellate process whereby three-fourths of the Georgetown Board of Selectmen could vote to overrule a Commission decision.[1]

South of Second Associates, one of the plaintiffs, owns approximately five acres of undeveloped real property in Georgetown located on Leavenworth Mountain south of the developed portion of the municipality. The property, at all times relevant to this proceeding, was zoned for multifamily use. On December 18, 1972, the plaintiffs submitted an application for a certificate of appropriateness to construct 57 townhouses which would occupy approximately 30% of their property on Leavenworth Mountain. The Commission reviewed the application and unanimously decided not to issue the requested certificate. The Georgetown Board of Selectmen voted four to two not to overrule the Commission's decision.

On May 11, 1973, after the time for the commencement of a Rule 106 action had passed,[2] the plaintiff initiated this action in the District Court challenging the constitutionality of the town's ordinances. Trial to the court resulted in a judgment that Ordinance Nos. 205 and 206 were void for reasons of vagueness. We affirm.

The pertinent provisions of Ordinance No. 205 provide:

Section VII. "HP — Historic Preservation District"

"A)  GENERAL DESCRIPTION

This District is intended to promote the educational, cultural, economic, and general welfare of the public through the protection, enhancement, and use of structures and areas of historical and/or architectural significance. In order to maintain the character and beauty of such structures, and areas, restrictive requirements governing both the use of land and the erection, moving, demolition, reconstruction, restoration, or alteration of structures thereon are provided. . . .

\* \* \* \* \*

B)  DEFINITIONS  FOR  THE  HISTORICAL  PRESERVATION DISTRICT

---

[1] Ordinance No. 206 also changed the Commission's membership requirements in a substantial manner. Under Ordinance No. 205, the seven-member Commission had to include an architect, the Chairman of the City Planning Commission and the Chairman of the Board of Adjustment. These membership requirements were abolished by Ordinance No. 206 after which Commission members were required only to be residents and property owners within the town of Georgetown. Although the composition of the Commission is a matter exclusively within the municipality's legislative discretion, we note that the membership requirements under Ordinance No. 205 ensured that applications for certificates of appropriateness would be considered by a commission partially composed of persons familiar with architectural styles and zoning provisions in general. Such factors, while not important in the context of the present proceeding, may weigh heavily in a Rule 106 action concerned with an alleged arbitrary enforcement of an otherwise valid ordinance.

[2] C.R.C.P. 106. *See Snyder v. City of Lakewood,* 189 Colo. 421, 542 P.2d 371 (1975); *Hidden Lake Development Co. v. District Court,* 183 Colo. 168, 515 P.2d 632 (1973).

1. Exterior Architectural Feature. The architectural style and general arrangement of the exterior of the structure including type, and texture of the building materials and including all windows, doors, lights, signs, and other fixtures appurtenant thereto.

2. External Improvement. Any structure place, work of art, landscape element, or other object constituting a physical betterment of real property which is visible from a public way or adjoining properties.

* * * *

4. Historical and/or Architectural Significance. That which has a special historical or aesthetic interest or value as part of the development, heritage, or cultural character of the city, region, state, or nation.

5. Area. Any land or buildings having notable character qualities of historical and/or architectural significance as determined by the Historical Preservation Commission. An area may include structures or other physical improvements on, above, or below the surface of the earth.

* * * *

C)   ROLE OF HISTORICAL PRESERVATION COMMISSION

* * * *

In determining the recommendation to be made concerning the issuance of a certificate of appropriateness, the Commission shall consider the following criteria:

(1) The effect of the proposed change upon the general historical and/or architectural character of the structure or area.

(2) The architectural style, arrangement, texture and materials used on existing and proposed structures, and their relation to other structures in the area.

(3) The effects of the proposed work in creating, changing, destroying, or affecting otherwise, the exterior architectural features of the structure upon which such work is done.

(4) The effects of the proposed work upon the protection, enhancement, perpetuation, and use of the structure or area.

(5) The use to which the structure or area will be put.

(6) The condition of existing improvements and whether or not they are a hazard to public health or safety.

If the Commission recommends that the certificate of appropriateness not be granted, it will advise the applicant of any changes which would secure the approval of the Commission and will withhold denial of the certificate of appropriateness not to exceed thirty (30) days, in order that the applicant may accept such proposed changes."

    The trial court concluded that the ordinances were unconstitutionally vague:

"After reviewing the ordinances and after hearing the testimony of numerous witnesses concerned with their enforcement (each of whom seemed to have a different opinion as to the meaning of the term 'historical and

architectural significance') the Court is convinced that the ordinances do not contain sufficient standards to advise ordinary and reasonable men as to the conduct which they attempt to proscribe or direct."

The trial court seems to have based its decision upon a finding that the "historical and/or architectural significance" language of the ordinance was vague. We find such language sufficiently definite, but hold the ordinances unconstitutionally vague in failing to delineate the differently classified areas within the District.

## I.
### *"Historical and/or Architectural Character"*

■ Georgetown's Ordinance No. 205 requires that the Commission consider the effect of the proposed construction or structural alteration upon the "general historical and/or architectural character of the structure or area." Ordinance No. 205, section VII(C)(1). The term "historical and/or architectural significance:" is defined in general terms by section VII(B)(4), *supra*.

Application of the ordinance does not, however, depend solely upon an abstract definition. Section VII(C) sets forth six specific criteria which focuses the attention of the Commission and of potential applicants for certificates of appropriateness on objective and discernible factors. The Commission is required by the ordinance to consider the architectural style, arrangement, texture, and material used on existing buildings or structures, as well as on the proposed structure and their relationship to other structures in the area. These objective and easily discernible factors give substance to the ordinance's "historical and/or architectural character" language.

Courts in other jurisdictions have found similar enactments, although somewhat uncertain in the abstract, to be sufficiently definite in the context of actual application. In *Town of Deering v. Tibbetts,* 105 N.H. 481, 202 A.2d 232 (1964), the Court declared:

"While determination of what is compatible with the 'atmosphere' of the town may on first impression be thought to be a matter of arbitrary and subjective judgment, under consideration it proves not to be. As stated in Anderson, 'Architectural Controls,' 12 Syracuse L. Rev. 26, 45, the language 'takes clear meaning from the observable character of the district to which it applies.' See also, 1 Rathkopf, The Law of Zoning and Planning (3d ed. 1969) 11-29."

Our conclusion that the "historical and/or architectural" language in the Georgetown ordinance is sufficiently definite reflects the consensus of those courts which have considered similar provisions designed to preserve historical areas through the enactment of reasonable regulations. *Figarsky v. Historic District Commission of the City of Norwich,* 171 Conn. 198, 368 A.2d 163 (1976); *Trustees of Sailors' Snug Harbor v. Platt,* 29 App. Div.2d 376, 288 N.Y.S.2d 314 (1968); *Town of Deering*

*v. Tibbetts, supra; City of Santa Fe v. Gamble-Skogmo, Inc.*, 73 N.M. 410, 389 P.2d 13 (1964); *Opinion of the Justices to the Senate,* 333 Mass. 773, 128 N.E.2d 557 (1955); *City of New Orleans v. Levy,* 223 La. 14, 64 So.2d 798 (1953); *See also* 1 *Rathkopf* §15.01, *The Law of Zoning and Planning* (4th ed.).

We conclude that the "historical and/or architectural character" language of the ordinance, when considered in conjunction with the objective factors contained in the ordinance, and in the context of the public purposes to be achieved, is sufficiently definite to pass constitutional muster. The ordinance contains sufficient standards to advise ordinary and reasonable men as to the type of construction permitted, permits reasonable application by the Commission, and limits the Commission's discretionary powers.

## II.
### *Relevant Area*

■ Georgetown's historical preservation ordinance designates all property within the municipal limits as a historical preservation district. Most municipalities which have established similar historical preservation districts, however, specifically delineate those areas which possess such a unique character as to be entitled to preservation. *See Figarsky v. Historical District Commission of the City of Norwich, supra; Maher v. City of New Orleans,* 516 F.2d 1051 (5th Cir. 1975); *Rebman v. City of Springfield,* 111 Ill. App.2d 430, 250 N.E.2d 282 (1969); *Opinion of the Justices to the Senate, supra; Opinion of the Justices to the Senate,* 333 Mass. 783, 128 N.E.2d 563 (1955); *see also* section 24-65.1-201(1)(c), C.R.S. 1973 (1977 Supp.).

Although the ordinance contains standards sufficient to give substance to the "historical and/or architectural character" language of the ordinance by reference to the area in which the proposed construction or structural alteration is to occur, nowhere in the ordinance is a delineation of the relevant areas to be found. The ordinances' definition of area, section VII(B)(5), *supra,* fails to set forth sufficient criteria to enable the potential applicant to reasonably ascertain in which area his property is situated.

The record indicates that the Commission members divide Georgetown into two or three distinct areas. Several members testified that Georgetown was divided into northern and southern areas. Still others, while agreeing that the northern and southern areas exist, felt that a transitional or buffer area exists between the two larger areas. The Commission's unpublished and indefinite delineation of the areas is legally insufficient.

We conclude that Ordinance Nos. 205 and 206 vested unreviewable discretion in the Commission. Under the ordinances a property owner cannot reasonably ascertain which architectural designs would entitle him

to a certificate of appropriateness. Areas entitled to protection must be clearly delineated in the ordinance. The ordinances, therefore, are void for vagueness.

In view of the result which we have reached, the remaining allegations of error[3] do not require discussion.

The judgment is affirmed.

---

[3] The plaintiff's allegation that the vagueness of the ordinance is indicated by the fact that it still does not know which design the Commission will approve is not a facial constitutional attack, but rather a challenge which must be brought in a Rule 106 action. C.R.C.P. 106; *see* Ordinance No. 205, section VII(C).