K & S CORPORATION, a Colorado corporation, Plaintiff–Appellant,

v.

GREELEY LIQUOR LICENSING AUTHORITY, a governmental entity, Defendant–Appellee.

No. 06CA2669.

Colorado Court of Appeals, Div. II.

April 3, 2008.

Coleman, Liu, Lyons, & Collins, LLP, Ginger V. Geissinger, Greeley, Colorado, for Plaintiff–Appellant.

Richard Brady, City Attorney, Gordon B. Green, Assistant City Attorney, Greeley, Colorado, for Defendant–Appellee.

Opinion by Judge ROTHENBERG.

In this C.R.C.P. 106(a)(4) action, plaintiff, K & S Corporation, doing business as Corleone's Restaurant, appeals the district court's judgment affirming the order issued by the Greeley Liquor Licensing Authority, finding that Corleone's had violated section 12–47–901(1)(a), C.R.S.2007, by serving a visibly intoxicated person or a known habitual drunkard. We affirm.

According to the evidence presented to a hearing officer at the public hearing before the Greeley Liquor Licensing Authority, on September 2, 2005, a police officer saw an intoxicated man named J.H. sitting outside Corleone's with the owner of the restaurant and bar. J.H. told the officer he had had "way too much" to drink. The officer and the owner got into a heated conversation about J.H.'s condition, and the officer told the owner not to serve J.H. alcohol again. According to the officer, the owner said he knew J.H. was an alcoholic, J.H. had been served at Corleone's while intoxicated, and he (the owner) would take care of J.H. and get him home.

The owner denied making these statements, but another officer corroborated the statements and observations of the first officer. There was also evidence that two weeks earlier, one of the same officers found J.H. lying unconscious, dirty, and injured, in the roadway. When he was awakened, he became belligerent and had to be handcuffed and transported to the detoxification (detox) unit. Another officer accompanied the first officer and J.H. to the detox unit, and he testified that he had previously picked up J.H. in the same condition and on the same road. The officers learned from the detox staff and other police officers that he was a "regular" at the unit.

There was also testimony that on September 8, 2005, a liquor enforcement officer for

the City of Greeley entered Corleone's and saw J.H. being served alcohol. The enforcement officer testified that J.H. appeared to be intoxicated, and that the owner told the enforcement officer that unless a doctor or family member reported J.H. as a habitual drunkard, the owner could continue to serve him. According to a bartender employed at Corleone's, J.H. was there about fifteen times a month, there were times when he came in already intoxicated, and the bartender had called for taxicabs when J.H. was unfit to go home on his own.

Corleone's was issued a citation for the incident on September 2, alleging that it had served a visibly intoxicated person in violation of section 12–47–901(1)(a) and that it served a known habitual drunkard in violation of the same statute. Corleone's was also issued a citation for the incident on September 8 alleging that it served a known habitual drunkard in violation of the statute.

The hearing officer found that Corleone's had violated section 12–47–901(1)(a) on both dates, and the district court affirmed the decision.

### I.

■ Corleone's contends the hearing officer's finding that J.H. was "visibly intoxicated" on September 2, 2005, was not supported by competent evidence. We disagree.

Under C.R.C.P. 106(a)(4), a reviewing court may not reverse an administrative decision unless there is "no competent evidence" to support the decision. "No competent evidence" means that the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority. *City of Colorado Springs v. Givan,* 897 P.2d 753, 756 (Colo.1995).

We are in the same position as the district court in reviewing an administrative decision under C.R.C.P. 106(a)(4). We thus consider whether there is sufficient evidentiary support for the hearing officer's decision. *Id.*

Section 12–47–901(1)(a) provides that "it is unlawful for any person ... [t]o sell, serve, give away, dispose of, exchange, or deliver, or permit the sale, serving, giving, or procur-

ing of, any alcohol beverage to a visibly intoxicated person or to a known habitual drunkard." *See Largo Corp. v. Crespin,* 727 P.2d 1098, 1108 (Colo.1986) (furnishing liquor to persons who lack the judgment to drink responsibly poses a threat to their safety and the safety of others).

Circumstantial evidence may be used to show a vendor's knowledge that a customer is visibly intoxicated. *Christoph v. Colo. Commc'ns Corp.,* 946 P.2d 519, 522 (Colo.App.1997)(evidence that driver was "loud and rowdy," had bloodshot eyes, and needed to hold the wall to walk was sufficient to withstand summary judgment on the issue of vendor's knowledge); *Brown v. Hollywood Bar & Cafe,* 942 P.2d 1363, 1366 (Colo.App. 1997) (concluding circumstantial evidence was sufficient to show driver was visibly intoxicated, including testimony of a friend who thought driver was too intoxicated to drive, and evidence that driver poured beer down the front of his shirt).

Here, the first officer testified that, on September 2, he could hear J.H. yelling from 100 or 150 feet away; that J.H. was swaying, his eyes were bloodshot, and his speech was slow and slurred; that he smelled of alcohol; that his demeanor was the same as when the officer had transported him to the detox unit two weeks earlier; and that on the earlier date, J.H.'s blood alcohol level was five times the legal limit. The first officer said J.H. admitted he had had too much to drink, and the owner admitted he knew J.H. was intoxicated when he served him.

We therefore conclude there is record support for the hearing officer's finding that Corleone's served a visibly intoxicated person on September 2, 2005.

### II.

The term "known habitual drunkard" is not defined by the statute at issue here, and the hearing officer therefore applied its common meaning. On review, the district court referred to two dictionaries, and determined that the hearing officer's definition was consistent with those definitions and that her findings were supported by the record.

Corleone's contends the hearing officer and the district court applied an incorrect definition of "known habitual drunkard." According to Corleone's, this phrase should be interpreted to mean a person who has been adjudicated or determined by a court of competent jurisdiction to be a habitual drunkard. Corleone's also argues that sections 12–47–901(1)(a), 13–21–103, and 42–2–104(2)(c), C.R.S.2007, must be read *in pari materia* because they address the same subject matter. We disagree.

### A.

The interpretation of a statute is a question of law subject to de novo review. *Hendricks v. People,* 10 P.3d 1231 (Colo.2000); *Dunlap v. Colo. Springs Cablevision, Inc.,* 855 P.2d 6 (Colo.App.1992). Courts first look at the plain language of the statute and interpret its terms in accordance with their commonly accepted meanings. *City of Colorado Springs v. Securcare Self Storage, Inc.,* 10 P.3d 1244, 1249 (Colo.2000); *C Bar H, Inc. v. Bd. of Health,* 56 P.3d 1189, 1192–93 (Colo.App.2002). The language of a statute should not be given a strained or forced interpretation. *Securcare Self Storage,* 10 P.3d at 1249.

The supreme court has cautioned that "the interpretation of one statute by reference to an unrelated statute is an unreliable means of ascertaining legislative intent." *Bertrand v. Bd. of County Comm'rs,* 872 P.2d 223, 228 (Colo.1994) (rejecting the argument that the term "motor vehicle" in the Governmental Immunity Act should be defined by using the definition in the Uniform Motor Vehicle Law). The court in *Bertrand* concluded "motor vehicle" in the Governmental Immunity Act is a term of ordinary and common usage and it is fair "to assume that the legislature intended the plain and ordinary meaning of 'motor vehicle' to attach to [it]." *Id.* at 228–29.

■ We similarly conclude "known habitual drunkard" is a term of ordinary and common usage, and fact finders may apply its plain and ordinary meaning. *See id.*

### B.

Nor are we persuaded by Corleone's argument that sections 12–47–901(1)(a), 13–21–103, and 42–2–104(2)(c), address the same subject matter and therefore must be read *in pari materia* to determine the meaning of "known habitual drunkard."

Section 13–21–103 provides that civil liability accrues under the Dram Shop Act only if the provider of alcohol has received written notice that the person is a "habitual drunkard." However, the statute at issue here, section 12–47–901, is a liquor enforcement law and uses the term "known" habitual drunkard without any notice requirement. Thus, we may presume the legislature intended to omit a notice requirement from section 12–47–901. *See Largo Corp. v. Crespin,* 727 P.2d at 1107 (concluding there is no relationship between the Dram Shop Act and the beer and liquor codes); *see also* 7 John W. Grund et al., *Colorado Practice, Personal Injury Torts and Insurance* § 20.5 (2d ed.2007) (observing that the Dram Shop Act provides only limited relief to a small class of persons).

The purpose of section 42–2–104(2)(c) is also different, because it addresses driver's licenses and requires a judicial determination of a person's habitual drunkard status before a license may be denied on that basis. Section 12–47–901 only requires that the habitual drunkard be "known" as such to the seller of alcohol. Hence, these statutes do not address the same subject matter.

In *Christoph v. Colorado Communications Corp.,* 946 P.2d at 523, a division of this court, relying on *Sabo v. Shamrock Communications, Inc.,* 566 So.2d 267, 268–9 (Fla. Dist.Ct.App.1990), *approved sub nom. Peoples Restaurant v. Sabo,* 591 So.2d 907 (Fla. 1991), concluded that whether a licensee "willfully and knowingly" sold or served alcohol to a visibly intoxicated person is generally a question of fact which may be proved by either direct or circumstantial evidence.

Other jurisdictions have similar statutes that create liability or make it unlawful for a vendor of liquor to serve a habitual drunkard. *See* Ark.Code Ann. § 3–3–209 (2007) (Arkansas law prohibiting the sale of alcohol

"to an habitual drunkard or an intoxicated person"); Conn. Gen.Stat. § 30–86(b)(1) (2007) (Connecticut law prohibiting sale of alcoholic liquor to "any habitual drunkard, knowing the person to be such an habitual drunkard"); Ind.Code § 7.1–5–10–14 (2005) (Indiana law prohibiting sale of an alcoholic beverage by a seller "to a person whom he knows to be a habitual drunkard"). And the courts in other jurisdictions have reached similar results in construing such statutes. *See Jackson v. Cadillac Cowboy, Inc.*, 337 Ark. 24, 986 S.W.2d 410 (1999) (interpreting Arkansas statute); *Sabo*, 566 So.2d at 268–69 (concluding that sufficient circumstantial evidence could support a jury's determination that a vendor knew an individual was habitually addicted to alcohol based on his "repeated behavior and appearance"; rejecting argument that there must be direct evidence that the bar employees knew the customer was habitually addicted to alcohol when served; concluding such an interpretation would make the statutory provision meaningless and observing, "[I]t is a rare case in which a person with a habitual drinking problem announces as he or she enters a bar, 'I'm an alcoholic.' The converse is much more likely: alcoholics deny they have a drinking problem."); *see also Ellis v. N.G.N. of Tampa, Inc.*, 586 So.2d 1042 (Fla.1991) (concluding a cause of action for negligence only required evidence that the vendor of alcohol had knowledge the individual served was a habitual drunkard, and whether the vendor had such knowledge could be established by circumstantial evidence). We agree with the reasoning of these courts.

■ We therefore conclude the hearing officer and the district court did not err in determining that (1) "habitual drunkard" has a common meaning; and (2) whether a person is a habitual drunkard and whether the vendor of alcohol knew the patron was a habitual drunkard when served alcohol are factual inquiries based on the circumstances of each case. We further conclude the knowledge of a vendor of alcohol required by section 12–47–901(1)(a) can be shown by direct or circumstantial evidence and does not require formal notice or a prior court adjudication.

Accordingly, we reject Corleone's contention that the hearing officer and the district

court applied an incorrect definition of "known habitual drunkard."

### III.

■ Corleone's next contends there was insufficient evidence to support the hearing officer's finding that Corleone's employees were aware J.H. was a "known habitual drunkard" on September 2 and 8, when they served him alcohol. We disagree.

There was evidence presented at the hearing that J.H. was a "regular" at the detox unit because of his intoxicated state, and that his status as a habitual drunkard was well known to Corleone's. This evidence included the officers' testimony about statements made by the owner and the bartender. *Cf. Fleuridor v. Surf Cafe*, 775 So.2d 411 (Fla. Dist.Ct.App.2001) (evidence was insufficient to support motorist's allegation that cafe which served alcohol to driver of colliding vehicle knew driver was habitually addicted to alcohol; cafe's bartender served driver three or four drinks, driver did not appear intoxicated, he was not a regular at the cafe, and he drank there only three times a month). This was sufficient.

The judgment is affirmed.

Judge CARPARELLI and Judge BERNARD concur.