Carolyn J. KRUSE, Plaintiff–Appellant,

v.

TOWN OF CASTLE ROCK, a municipal corporation; Town Council consisting of Ray Waterman, Jack Hurd, Jay Richards, Randy A. Reed, Ryan Reilly, Ed Rusch, and Mitch Dulleck; and Castle Rock Historic Preservation Board, Defendants–Appellees.

No. 07CA1111.

Colorado Court of Appeals, Div. II.

July 24, 2008.

Dill Dill Carr Stonbraker & Hutchings, PC, Adam P. Stapen, Denver, Colorado, for Plaintiff–Appellant.

Senter Goldfarb & Rice, L.L.C., Thomas S. Rice, Elliot J. Scott, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge TAUBMAN.

Plaintiff, Carolyn J. Kruse, appeals the district court's judgment affirming the decision of defendant, the Town of Castle Rock, acting through its Town Council and individual council members, adopting an involuntary historic designation ordinance designating a house built in 1875 as a local historic landmark. Kruse also named the Castle Rock Historic Preservation Board as a defendant.

The principal issue in this case is whether the provisions of the Town's historic preservation ordinance (HPO) pertaining to the involuntary designation of property as historic are unconstitutionally vague. Because we conclude they are not and reject Kruse's

other challenges to the involuntary historic designation of the house on her property, we affirm.

## I. Background

In 1875, Samuel Dyer built a house at what is now 207 Perry Street in old town Castle Rock. It was one of the first homes built in the Town, and it is one of the last remaining structures from the Town's founding era. The house has a vernacular wood frame, which is representative of the houses built during the late 1800s. The 200 block of Perry Street is the last remaining intact historic block in Castle Rock, and it includes such historic buildings as the Owens House, built in 1879; the Canyon Pines Presbyterian Church, built in 1922; and the Masonic Lodge, built in 1887.

Kruse purchased the property on which the house is located in June 1998. Soon thereafter, she inquired of the Town's development director and one of the Town's planners whether the Town would be interested in including the property on a walking tour of historic houses in the downtown area. She also asked whether the Town would help pay for improvements to make the house look more like it did when it was first built. The Town employees declined to include the house on the walking tour, and one employee responded that "there is not one splinter of wood in that house that has any historical significance to the Town of Castle Rock."

In 1999, Kruse applied for a partial demolition permit, which was granted. The partial demolition permit did not include the original house structure but applied only to outbuildings and additions to the original house, such as the porch. Because of the presence of tenants, Kruse did not use the partial demolition permit within the allotted time and, thus, was granted a renewal of the permit in 2001.

From the date of purchase until 2005, when Kruse first applied for a full demolition permit, she spent approximately $100,000 to renovate the house, including making it suitable as a commercial property, painting, carpeting, installing wood floors, and electrical rewiring.

When Kruse applied for a full demolition permit, the Historic Preservation Board intervened. The Preservation Board sought to designate the house a historic landmark, and the Town's employees researched its history, and drafted a report for the Town Council recommending historic designation.

The Town Council held its first public hearing on the property on November 8, 2005. Kruse, her attorney, Town employees, and various Castle Rock residents testified. At the conclusion of the hearing, the Town Council voted 7–0 to approve an ordinance designating 207 Perry Street as a local historic landmark. Many council members, however, explained that their decision was difficult because it limited Kruse's right to use her property.

On January 10, 2006, a second public hearing was held. Again, Kruse, her attorney, Town employees, and several residents testified. This time, the Town Council voted 6–1 to approve the ordinance designating the property a historic landmark. The council made written findings and conclusions under the Town's historic preservation code in support of its decision.

Subsequently, Kruse filed suit asserting claims under C.R.C.P. 106(a)(4) for review of a governmental body's decision and C.R.C.P. 57 for declaratory relief. She also brought a promissory estoppel claim. The district court concluded that the Town's historic preservation code, with respect to involuntary historic designations, was not unconstitutionally vague. The court further concluded that the Town Council did not abuse its discretion in adopting the historic designation ordinance, the Preservation Board did not exceed the scope of its authority, and Kruse did not establish a prima facie case for equitable estoppel.

This appeal followed.

## II. Scope of Authority

Initially, we consider and reject Kruse's contention that, because the Town employees' actions exceeded the scope of their authority, the Town Council's designation of the property as a historic landmark is void.

Kruse contends that the Town Council exceeded its jurisdiction by allowing its staff to usurp the Preservation Board's authority by researching the history of the property, submitting a report favoring historic designation, advocating the adoption of a historic designation ordinance, and making recommendations to the Town Council. We disagree.

■ A municipality, like an administrative agency, must comply strictly with its enabling legislation, such as a charter or code. *See Martinez v. Colorado Dep't of Human Servs.*, 97 P.3d 152, 157 (Colo.App. 2003). If a municipality's officers or agents act outside the scope of their authority, their actions are void and can be collaterally attacked at any time. *See Flavell v. Dep't of Welfare*, 144 Colo. 203, 206, 355 P.2d 941, 943 (1960).

Pursuant to the Town's municipal code, the Town Council may, by ordinance, designate as a landmark a structure which has special historic or architectural value. *See* Castle Rock Mun.Code § 2.18.050 (1991). The Town's municipal code also establishes a Historic Preservation Board, "which shall have principal responsibility for matters of historic preservation as set forth in subsection G." *Id.* § 2.18.030. Subsection G outlines the Preservation Board's powers and duties, including the ability to adopt criteria for historic designations, "[r]eview properties nominated for designation as a historic landmark and recommend that the Town Council designate by ordinance those properties qualifying for such designation," and "[a]dvise the Planning Commission and Town Council on matters related to preserving the historic character of the Town." *Id.* § 2.18.030(G)(1), (2), (9).

Additionally, the Town's charter gives the Town Council authority to appoint a Town Manager. *See* Castle Rock Charter art. III, § 3–1 (1987). "The Town Manager shall be responsible to the Council for the proper administration of the matters placed in the Town Manager's charge." *Id.* § 3–3(a). The Town Manager is also empowered to hire Town employees, advise and make recommendations to the Town Council, and perform other duties as required by the charter or Town Council. *See id.*

Because the Town Manager is responsible for hiring employees, it logically follows that the employees may assist the Town Manager in exercising his or her duties. *See* Castle Rock Mun.Code § 2.04.010 ("As authorized by the Town's Home Rule Charter, there shall be recognized as offices of the Town the office of Town Manager, Town Clerk, Police Chief and Fire Chief. These offices shall have the powers and duties prescribed by the Charter, as well as any provisions of the Castle Rock Municipal Code not inconsistent therewith."). Accordingly, because the Town Manager may advise and make recommendations to the Town Council, so too may the Town Manager's employees. *See* Castle Rock Charter art. III, § 3–3(a); *see cf. IBC Denver II v. City of Wheat Ridge*, 183 P.3d 714, 718–19 (Colo.App.2008).

■ Although Kruse argues that the Town Council exceeded its jurisdiction by allowing the Town employees to participate in the historic designation process, the Town's charter and municipal code suggest otherwise. First, the Preservation Board is not exclusively responsible for historic designations. The municipal code states that the Preservation Board "shall have principal responsibility" for historic preservation matters, thereby permitting other Town officials to provide advice and recommendations regarding historic preservation to the Town Council. *See* Castle Rock Mun.Code § 2.18.030.

Second, the Town Council, as the Town's governing body, is the only body with the authority to designate properties as historic landmarks. *See id.* § 2.18.050. The Town Manager is generally charged with advising and making recommendations to the Town Council, as the council deems necessary. *See* Castle Rock Charter art. III, § 3–3(a). The Town employees, who are agents of the Town Manager, therefore, may also advise and make recommendations to the Town Council on behalf of the Town Manager. *See* Castle Rock Mun.Code § 2.04.010.

Here, although the Preservation Board had primary authority to research the history of the house and recommend its historic designation, the Town employees were not precluded from sharing such authority with

the Preservation Board. Accordingly, the Town employees did not usurp the Preservation Board's authority by researching the history of the house, recommending its historic designation, advocating the adoption of a historic designation ordinance, or making recommendations to the Town Council. Because the Town employees' actions did not exceed the scope of their authority, their actions are not void, and, consequently, the Town Council's decision to adopt the historic designation ordinance for the property is likewise not void.

### III. Constitutionality of Town's Historic Preservation Ordinance

Kruse next contends that the provisions of the Town's HPO concerning involuntary historic designation, see Castle Rock Mun.Code § 2.18.060, are unconstitutionally vague. We are not persuaded.

We review de novo a constitutional challenge to a municipal ordinance. See People v. Dist. Court, 953 P.2d 184, 187 n. 4 (Colo.1998). Municipal ordinances, like statutes, are presumed constitutional. E–470 Public Highway Authority v. Revenig, 91 P.3d 1038, 1041 (Colo.2004).

"A statute or ordinance which is unconstitutionally vague constitutes a denial of due process of law under the United States and Colorado Constitutions." Casados v. City & County of Denver, 832 P.2d 1048, 1051 (Colo.App.1992), rev'd, 862 P.2d 908 (Colo.1993). We must attempt to construe a statute or ordinance in such a manner as to satisfy constitutional due process requirements. Bedford Motors, Inc. v. Harris, 714 P.2d 489, 492 (Colo.1986).

A statute or ordinance is unconstitutionally vague under the void for vagueness doctrine if "persons of common intelligence must necessarily guess as to its meaning and differ as to its application." Watso v. Colorado Dep't of Social Servs., 841 P.2d 299, 309 (Colo.1992). An ordinance's language must provide fair notice and set forth sufficiently definite standards to ensure uniform, nondiscriminatory enforcement. See id. The vagueness doctrine seeks to minimize the potential for arbitrary and discriminatory en-forcement. Citizens for Free Enterprise v. Dep't of Revenue, 649 P.2d 1054, 1068 (Colo. 1982).

Municipal ordinances, like statutes, often contain broad terms to allow their applicability to varied circumstances. Stamm v. City & County of Denver, 856 P.2d 54, 56 (Colo.App.1993). "[G]enerality is not the equivalent of vagueness, and ... terms used need not be defined with mathematical precision in order to withstand a vagueness challenge." Id. "If a challenged ordinance lends itself to alternate constructions, one of which is constitutional, the constitutional interpretation must be adopted." People ex rel. City of Arvada v. Nissen, 650 P.2d 547, 550 (Colo.1982).

"Where fairness can be achieved by a commonsense reading of the statute, we will not adopt a hypertechnical construction to invalidate the provision." Americans United for Separation of Church & State Fund, Inc. v. State, 648 P.2d 1072, 1086 (Colo.1982) (quoting People v. Garcia, 197 Colo. 550, 554, 595 P.2d 228, 231 (1979)). "Words and phrases used in statutes and other official regulations are to be accorded their generally accepted meaning, and courts have a duty to interpret such language in a reasonable and practical manner so as to impart a rational and cogent meaning to it." Stamm, 856 P.2d at 56.

Appellate courts do not require that every word or phrase be specifically defined, and have "often made reference to standard dictionaries and to the case law to determine the probable legislative intent in using a particular word." Nissen, 650 P.2d at 551 (quoting People v. Blue, 190 Colo. 95, 100, 544 P.2d 385, 388 (1975)).

Although Kruse's attorney raised a constitutional challenge to the HPO during the public hearings, he did not specify, at the hearings or in the briefs, whether the challenge was facial or as applied. We will address both types of constitutional challenges in turn.

### A. Facial Challenge

To succeed on a facial constitutional challenge under the void for vagueness

doctrine, a plaintiff must show that the statute or ordinance is incomprehensible or impermissibly vague in all its applications. *People v. Shell,* 148 P.3d 162, 172 (Colo.2006); *see also People v. Czemerynski,* 786 P.2d 1100, 1112 (Colo.1990). We must uphold the ordinance unless the plaintiff proves it unconstitutional beyond a reasonable doubt. *E–470 Public Highway Authority,* 91 P.3d at 1041.

We note that a facial challenge "concerns a general rule or policy applicable to an open class of individuals and, as such, is generally a legislative act subject to review under C.R.C.P. 57 rather than C.R.C.P. 106(a)(4)," which permits review of judicial or quasi-judicial agency actions. *Two G's, Inc. v. Kalbin,* 666 P.2d 129, 133 (Colo.1983) (quoting *Tri–State Generation & Transmission Co. v. City of Thornton,* 647 P.2d 670, 676 n. 7 (Colo.1982)). Kruse properly pled her claim under C.R.C.P. 57, and, therefore, we have jurisdiction to consider her facial challenge.

Kruse contends that four terms in that part of the HPO that applies to involuntary historic designations are unconstitutionally vague. Specifically, she argues that the terms "unusual," "uncommon," and "character and sense of place" in subsection A.1 are susceptible of more than one meaning, and, because no guidelines exist to define the terms, property owners are subject to the whim of the Town Council in interpreting these subjective considerations. She also asserts that the term "several" in subsection A.2 is not defined and, thus, allows the Town Council to make arbitrary decisions with respect to similarly situated property owners.

The district court concluded that the HPO was not unconstitutionally vague because, when the challenged terms are read in context, the HPO's language "passes constitutional muster." We agree.

If a property owner does not consent to a historic designation, certain criteria must be satisfied before the Town Council enacts an involuntary historic designation ordinance.

A. If the owner of the property does not consent to the review, approval shall require a super-majority vote, one (1) vote more than a simple majority vote, of the Town Council. In such cases, the Town Council shall use the following criteria in addition to the designation criteria listed in Section 2.18.170[sic]:

The property has overwhelming historic importance to the entire community. The term overwhelming significance shall, for purposes of this Chapter, encompass:

1. Possessing such *unusual* or *uncommon* significance that the structure's potential demolition or major alteration would diminish the *character and sense of place* in the community of Castle Rock.

2. Demonstrating superior or outstanding historical characteristics or meeting *several* of the criteria outlined in Section 2.18.160. The term superior shall mean excellence of its kind and the term outstanding shall mean marked by eminence and distinction.

B. The Town Council may exempt a property meeting the above criteria if the Council finds that the property owner has shown the historic designation creates an undue hardship. The following criteria shall be used in assessing the potential for hardship:

1. Economic hardship:

a. For investment or income-producing properties, the owner's inability to obtain a reasonable rate of return in its present condition or, if rehabilitated, under the alterations' criteria.

b. For nonincome producing properties consisting of owner occupied single-family dwelling and/or institutional properties not solely operating for profit, the owner's inability to convert the property to institutional use in its present condition or, if rehabilitated, under the alterations' criteria.

2. Noneconomic hardship: Designation creates a situation substantially inadequate to meet the applicant's needs because of specific health and/or safety issues.

Castle Rock Mun.Code § 2.18.060 (emphasis added).

In addition to the above criteria for involuntary historic designations, the Town's municipal code sets forth nine criteria which

must be considered for both voluntary and involuntary historic designations:

> In determining whether a structure, feature or area is appropriate for designation as an historic landmark, the Board and Town Council shall consider whether the landmark proposed for designation meets one (1) or more of the following criteria:
>
> A. The character, interest or value of the proposed landmark as part of the development heritage or cultural characteristics of the Town;
>
> B. The proposed landmark as a location of a significant local, county, state or national event;
>
> C. The identification of the proposed landmark with a person or persons significantly contributing to the local, county, state or national history;
>
> D. The proposed landmark as an embodiment of the distinguishing characteristics of an architectural style valuable for the study of a period, type or method of construction, or the use of indigenous materials, the use of the locally quarried rhyolite rock being of special importance to the Town;
>
> E. The proposed landmark as an identification of the work of an architect, landscape architect or master builder whose work has influenced development in the Town, County, State, or nation;
>
> F. The proposed landmark's architectural, cultural or archeological significance;
>
> G. The proposed landmark as an example of either architectural or structural innovations;
>
> H. The relationship of the proposed landmark to other distinctive structures, districts or sites which would also be determined to be of historical significance; and
>
> I. The age of the structure. A fifty-year minimum is generally required.

Castle Rock Mun.Code § 2.18.160.

Here, when the criteria for involuntary historic designation are read in conjunction with the general criteria for historic designation, the HPO provides property owners with fair notice that their property may be designated a historic landmark if one or more of those criteria are satisfied.

When addressing vagueness challenges to historic preservation ordinances, courts recognize that historic properties are unique. Consequently, such ordinances must contain broad terms to permit application to different potentially historic properties. *See Stamm,* 856 P.2d at 56.

■■■■ Although Kruse argues that "unusual," "uncommon," "character and sense of place," and "several" are vague because they are not defined, not every word or phrase in an ordinance must be specifically defined. *See Nissen,* 650 P.2d at 551. Terms may be given their generally accepted meaning. *See Stamm,* 856 P.2d at 56. "Unusual" is defined as "being out of the ordinary" or "being unlike others." *Webster's Third New International Dictionary* 2514 (1986). "Uncommon" means "not ordinarily encountered," "more than ordinary," or "remarkable in character, quality, or kind." *Id.* at 2485. "Character and sense of place" "takes clear meaning from the observable character of the district to which it applies." *South of Second Associates v. Georgetown,* 196 Colo. 89, 93, 580 P.2d 807, 810 (1978) (quoting Robert M. Anderson, *Architectural Controls,* 12 Syracuse L.Rev. 26, 45 (1960)) ("While determination of what is compatible with the 'atmosphere' of the town may on first impression be thought to be a matter of arbitrary and subjective judgment, under consideration it proves not to be." (quoting *Town of Deering v. Tibbetts,* 105 N.H. 481, 202 A.2d 232 (1964))).

Because these terms' generally accepted meanings provide sufficient guidance in understanding them, persons of common intelligence need not guess at their meaning. *See Watso,* 841 P.2d at 309. Although "several" is defined both as "more than one" and "consisting of an indefinite number more than two and fewer than many," *see Webster's Third New International Dictionary* 2080, a person of common intelligence could reasonably assume that "several" means at least two. *See Watso,* 841 P.2d at 309.

When the challenged terms are considered not in the abstract but rather in the context of the entire HPO, they are sufficiently definite. *See South of Second Associates,* 196

Colo. at 93, 580 P.2d at 810. The nine objective criteria set forth in section 2.18.160 give substance to the HPO's involuntary designation criteria. *See id.* Further, the challenged language merely guides the overall determination of whether the property has "overwhelming historic importance to the entire community." Kruse does not challenge this criterion, and we conclude it is sufficiently definite and provides fair notice. *See Watso,* 841 P.2d at 309.

To the extent Kruse contends that the term "several" allows the Town Council to make arbitrary decisions with respect to similarly situated property owners, "several" is necessarily broad to allow the Town Council to apply the criteria in varied circumstances. *See Stamm,* 856 P.2d at 56.

Because Kruse has not shown that the HPO is incomprehensible or impermissibly vague in all its applications, we conclude that it is not unconstitutionally vague on its face. *See Shell,* 148 P.3d at 172; *see also Czemerynski,* 786 P.2d at 1112. She has not proved that the HPO is facially unconstitutional beyond a reasonable doubt. *See E–470 Public Highway Authority,* 91 P.3d at 1041. Consequently, we further conclude that Kruse's facial challenge to the constitutionality of the HPO fails, and, therefore, the district court did not err in upholding it as constitutional on its face.

Our conclusion that the language in the HPO is sufficiently definite reflects the consensus of those courts which have considered similar historic preservation ordinances. *See South of Second Associates v. Georgetown,* 196 Colo. at 93, 580 P.2d at 810; *see also Maher v. City of New Orleans,* 516 F.2d 1051, 1063 (5th Cir.1975) (holding that a historic preservation ordinance was constitutional, and specifically concluding that the meaning of "to preserve the character" "takes clear meaning from the observable character of the district to which it applies"); *Park Home v. City of Williamsport,* 545 Pa. 94, 680 A.2d 835, 839 (1996) (rejecting the plaintiff's challenge that the historic preservation ordinance was unconstitutionally vague because the plaintiff failed to show how the ordinance was vague or how the

preservation board applied it in an arbitrary or discriminatory way).

Both parties cite *South of Second Associates* to support their respective positions. We believe that it supports the conclusion that the HPO is not unconstitutionally vague.

In *South of Second Associates,* the plaintiffs challenged Georgetown's historic preservation ordinance. *See* 196 Colo. at 90–94, 580 P.2d at 808–811. Like the Town's HPO, Georgetown's historic preservation ordinance set forth criteria to be considered in making a historic designation determination. *See id.* at 93, 580 P.2d at 810. The plaintiffs challenged the ordinance on the basis that the terms "historical and architectural significance" and "area" were unconstitutionally vague. *See id.* at 90, 580 P.2d at 808. The supreme court upheld the constitutionality of the former term, concluding that the six specific historic designation criteria gave substance to the challenged language. However, the supreme court held that the term "area" was unconstitutionally vague because the record demonstrated that the term was susceptible of different meanings.

Here, as in *South of Second Associates,* the nine specific historic designation criteria give substance to the HPO's challenged terms.

### B. As–Applied Challenge

To the extent Kruse contends the HPO is unconstitutionally vague as it was applied to her, we disagree.

 To prevail on an as-applied constitutional challenge under the void for vagueness doctrine, a plaintiff must demonstrate that the statute or ordinance is impermissibly vague as applied to him or her. *People v. Baer,* 973 P.2d 1225, 1233 (Colo. 1999). The plaintiff must show that there is a reasonable probability that the statute is unconstitutional. *Sanger v. Dennis,* 148 P.3d 404, 410 (Colo.App.2006). Because as-applied challenges concern the governmental body's quasi-judicial action, we have jurisdiction pursuant to C.R.C.P. 106(a)(4).

 The house at 207 Perry Street was, as noted, one of the first houses built in Castle Rock, and it is one of the few remain-

ing houses from the founding era. This information alone leads us to conclude that the property has overwhelming historic importance to the entire community.

Further, we conclude the house has unusual and uncommon significance, again, by virtue of its being one of the oldest remaining buildings in the Town.

Additionally, evidence was presented at the Town hearings that the 200 block of Perry Street has great historic importance to the community because it is one of the few remaining historic areas, encompassing historic buildings, such as the Canyon Pines Presbyterian Church, built in 1922, and the Masonic Lodge, built in 1887.

We also conclude the term "character and sense of place" is not unconstitutionally vague as applied. If the house were demolished and replaced with a new building, as Kruse proposes, the character of Perry Street's 200 block, not to mention the entire community, would be greatly diminished. The sense of place would also be diminished if one of the oldest buildings on the block were destroyed.

With respect to the second criterion, a property has overwhelming historic importance to the entire community if it has superior or outstanding historical characteristics *or* meets several of the criteria outlined in section 2.18.160. Testimony was presented at the Town hearing that Kruse's property has superior and outstanding historical characteristics because it has retained its original architectural integrity. Moreover, testimony established that the house has superior or outstanding historical characteristics because of its significant occupants and owners since 1875.

Further, there was also testimony that the house met six of the nine criteria, which are indisputably more than "several."

Consequently, we conclude that Kruse did not sustain her burden of demonstrating that the HPO was unconstitutionally vague as applied to her. Accordingly, we conclude that the HPO is constitutional, and the trial court did not err in making such a determination.

## IV. Town Council's Adoption of Historic Designation Ordinance

Kruse next contends the Town Council abused its discretion when it adopted the ordinance designating her property a historic landmark. We disagree.

 C.R.C.P. 106(a)(4) provides for judicial review of a decision of any governmental body or officer exercising judicial or quasi-judicial functions for the limited purpose of determining whether the body or officer exceeded its jurisdiction or abused its discretion. *Widder v. Durango Sch. Dist. No. 9–R*, 85 P.3d 518, 526 (Colo.2004). "Abuse of discretion means that the decision under review is not reasonably supported by any competent evidence in the record." *Id.* "A record lacking any competent evidence means that the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." *Id.* at 526–27; *see also K & S Corp. v. Greeley Liquor Licensing Auth.*, 183 P.3d 710, 712 (Colo.App.2008).

 Governmental proceedings are accorded a presumption of validity and regularity, and all reasonable doubts as to the correctness of the governmental body's rulings must be resolved in its favor. *City & County of Denver v. Bd. of Adjustment*, 55 P.3d 252, 254 (Colo.App.2002). The burden is on the party challenging a governmental body's action to overcome the presumption that the government's acts were proper. *Id.*

 We sit in the same position as the district court in reviewing a governmental body's decision under C.R.C.P. 106(a)(4). *K & S Corp.*, 183 P.3d at 712. We, therefore, consider whether there is sufficient evidentiary support for the Town's decision. *See id.* We are not the fact finder and, thus, cannot weigh the evidence or substitute our own judgment for that of the Town. *See Bd. of County Comm'rs v. O'Dell*, 920 P.2d 48, 50 (Colo.1996).

 Here, Kruse argues that the Town Council abused its discretion in adopting a historic designation ordinance for her property because its findings are not supported

by competent evidence. Having reviewed the transcripts from the Town Council's hearings held on November 8, 2005 and January 10, 2006, we conclude that the Town Council's findings are supported by competent evidence. Because the Town Council was required to find that "several," not all, of the criteria were satisfied, *see* Castle Rock Mun.Code § 2.18.060(A)(2), we will only analyze the evidence supporting a few of the criteria to illustrate that the Town Council did not abuse its discretion.

Pursuant to criterion A, the Town Council evaluates the character, interest, or value of the proposed landmark as part of the Town's heritage or cultural characteristics. *Id.* § 2.18.160(A). Although Kruse argues that other structures in the Town have virtually identical features, the Town's senior planner, Jeff Brasel, testified at the hearing that "[t]here are other houses of similar style, but there are none that retain the integrity, architectural integrity, that this house does." Brasel also testified that the house is valuable as part of the cultural characteristics of the Town because it is one of only two wood frame vernacular houses still in existence. Because we cannot reweigh the evidence, *see O'Dell*, 920 P.2d at 50, we conclude that there was competent evidence in the record to support the Town Council's historic designation determination with respect to criterion A.

Pursuant to criterion C, the Town Council considers the identification of the proposed landmark with a person or persons who significantly contributed to the local, county, state, or national history. Kruse acknowledges that James Frank Gardner, considered to be one of the founding fathers of Douglas County, owned the house, and that the house was built by Samuel Dyer, whose father was a famous Colorado Methodist circuit riding minister. However, she argues that the Town Council should not have considered their relationship to the property because Gardner never lived in the house and Dyer already has a house designated as a local historic landmark in his honor.

The criterion merely requires that the proposed landmark be identified with a person who significantly contributed to history. Ac-

cordingly, it is irrelevant that Gardner never lived in the house and Dyer already is honored with another landmark. Additionally, evidence was presented that the Town's first mayor and a signatory to the Town's articles of incorporation, Irving S. Morse, owned and lived in the house. Further, the Town's only doctor until approximately 1890 lived and worked out of the house, later renting the house to another doctor, who also lived and worked out of the house.

The evidence presented at the hearing establishes that the property is identified with people who significantly contributed to Castle Rock's history. Again, because we cannot reweigh the evidence presented at the hearings, *see O'Dell*, 920 P.2d at 50, and there is competent evidence in the record to support the Town Council's determination with respect to criterion C, we must uphold its determination.

Finally, criterion I states, "The age of the structure. A fifty-year minimum is generally required." Castle Rock Mun.Code § 2.18.160(I). The undisputed evidence presented at the Town Council hearings was that the property was over 130 years old. Accordingly, there is competent evidence in the record to support the Town Council's determination with respect to criterion I.

Because "several" historic designation criteria were satisfied and supported by competent evidence at the hearings, we conclude the Town Council did not abuse its discretion in adopting a historic designation ordinance for Kruse's property.

We additionally note that the Town's Vision 2020 statement, which incorporates the community's values, lists as a goal preservation of the Town's historic buildings and small town atmosphere. The comprehensive plan includes a section devoted to historic preservation. Although many of the Town Council members expressed concern that the involuntary historic designation could infringe upon Kruse's rights as a property owner, the council ultimately concluded that, in line with the Town's Vision 2020 statement, historic preservation of Kruse's house was of utmost importance.

## V. Economic Hardship Provision in the HPO

Kruse contends that the Town Council misconstrued the HPO with respect to the economic hardship provision. We disagree.

 Section 2.18.060(B) states that "[t]he Town Council may exempt a property meeting the above criteria if the Council finds that the property owner has shown the historic designation creates an undue hardship." Both economic and noneconomic hardship may be considered. *See id.* For investment or income producing properties, such as Kruse's house, economic hardship is defined as "the owner's inability to obtain a reasonable rate of return in its present condition or, if rehabilitated, under the alterations' criteria." *Id.*

The Town Council, in its written findings, explained that, while Kruse presented evidence of her investments and opined that the property would generate higher income if redeveloped, she "presented no evidence that the historic designation would create an undue hardship."

Kruse argues that the Town Council's finding was erroneous because she presented evidence demonstrating her inability to obtain a reasonable rate of return on the property because of its present condition and, thus, satisfied the undue hardship criterion.

Kruse indeed presented evidence of hardship. She testified at the first hearing and submitted an exhibit indicating that she had spent $25,800 in capital improvements. At the second hearing, however, Kruse testified that she had spent over $100,000 in capital improvements. When questioned about the inconsistency by a council member, she explained that for tax purposes, she could only claim $25,800 in capital improvements.

Additionally, to establish her inability to obtain a reasonable rate of return on the property, Kruse testified that she could only make $2.48 per square foot for the property, but a similar commercial building that she owned nearby yielded $25 per square foot. When questioned further, Kruse explained that the property's rental value was calculated based upon rentals at both 203 and 207 Perry Street, including use of outbuildings and a parking area.

Despite this evidence, the Town Council was not persuaded that she would suffer "undue hardship" as a result of an involuntary historic designation. Because the Town Council was in a position to make credibility determinations and we cannot reweigh the evidence presented, *see O'Dell,* 920 P.2d at 50, we conclude that the Town Council did not err in concluding that Kruse had not established undue hardship.

## VI. Equitable Estoppel

Finally, Kruse contends that the Town Council should be equitably estopped from enacting an ordinance designating her property as a historic landmark. We disagree.

 "The doctrine of equitable estoppel is premised upon principles of fair dealing and is designed to prevent manifest injustice." *Ward v. Dep't of Natural Resources,* —— P.3d ——, ——, 2008 WL 1745858, at *7 (Colo.App. No. 06CA2496, Apr. 17, 2008) (quoting *Comm. for Better Health Care for All Colo. Citizens v. Meyer,* 830 P.2d 884, 891 (Colo.1992)). "In the context of municipalities, the doctrine of equitable estoppel bars a city from enforcing some obligation by taking a position contrary to a previous representation reasonably relied upon by the party dealing with the city to his detriment." *P-W Investments, Inc. v. City of Westminster,* 655 P.2d 1365, 1372 (Colo.1982).

 "Whether the circumstances of a particular case involve representation and reasonable reliance giving rise to equitable estoppel is a question of fact." *Ward,* —— P.3d at ——, 2008 WL 1745858, at *7. "Findings of fact must be accepted on review, unless they are so clearly erroneous as not to find support in the record." *Id.*

 Here, trial court made detailed findings of fact and conclusions of law with respect to Kruse's equitable estoppel claim. Noting that Kruse did not commence a formal proceeding to seek historic designation but rather relied on the personal opinions of some Town employees regarding the historic value of her home, the court concluded that

Kruse's reliance was not reasonable, especially because the Town Council never expressed an opinion on the matter. The trial court rejected Kruse's argument that, because she obtained a partial demolition permit, she reasonably believed a full demolition permit would be granted. Mere approval and renewal of a partial demolition permit, the court explained, does not necessarily indicate that a full demolition permit would be granted, and, accordingly, her reliance was unreasonable. The court concluded that, "[b]ecause Kruse did not change her position in justifiable reliance, relief under the doctrine of equitable estoppel is inappropriate."

We conclude the trial court's findings are supported by the record. To the extent that Kruse argues that the totality of the circumstances—the Town's granting and renewing her partial demolition permit twice, the Town Council's approving demolition permits for other seemingly historic buildings nearby, and the Town employees' statements that the house lacked historic value—creates justifiable reliance, we disagree. Neither the above circumstances individually nor the totality of the circumstances constituted an adequate basis for reasonable reliance.

The judgment is affirmed.

Judge FURMAN and Judge METZGER * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.